———

Sᴘᴀʀʀᴏᴡ, Appellant, vs. Mᴇɴᴀsʜᴀ Pᴀᴘᴇʀ Cᴏᴍᴘᴀɴʏ, Respondent.

*September 17—October 7, 1913.*

*Master and servant: Unsafe working place: Statutes: Injury to servant: Liability of master: Questions for jury.*

1. Under sub. 11, sec. 2394—41, sec. 2394—48, and sec. 2394—49, Stats. (Laws of 1911, ch. 485), if the place of employment is not as free from danger to employees as the nature of the employment will reasonably permit, and the danger is patent, the employer cannot escape liability for a resulting injury to an employee by showing that he did not construct the dangerous place. It is sufficient that he occupied or maintained it or permitted his employees to work in it.

2. Nor, under said statutes in connection with the statute abolishing the defense of assumption of risk, can the employer defeat a recovery by showing that he furnished appliances in common use.

3. Plaintiff was injured while unloading logs from a flat car under the direction of defendant's foreman, who was familiar with the situation and the dangers attending the work. The logs were held upon the car by stakes at the side, and plaintiff was chopping these partly off so that the logs might break them down and roll from the car. While he was cutting the last stake, which was partly rotten, the logs started and the stake, instead of breaking away to the side, was forced toward the end of the car by a knot on a log pressing against it, and struck the plaintiff. The evidence tended to show that there was in common use, known to defendant or which in the exercise of ordinary care it should have known, a safe way in which logs could be unloaded, but that this required that the logs

should be loaded in a different manner upon the cars. *Held*
that, although the logs had been loaded upon the car in ques-
tion at another place by defendant's vendor and the method
of loading was not under the supervision or control of defend-
ant, it was error to direct a verdict in defendant's favor.

VINJE, BARNES, and SIEBECKER, JJ., dissent.

APPEAL from a judgment of the circuit court for Ashland
county: G. N. RISJORD, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Lamoreux & Cate,*
and oral argument by *C. A. Lamoreux.*

For the respondent there was a brief by *Wm. F. Shea* and
*Doe & Ballhorn,* and oral argument by *J. B. Doe.*

KERWIN, J.   This action was brought by the plaintiff, an
employee of defendant, to recover damages for injuries sus-
tained by him while engaged in unloading logs from a rail-
road car.   The court below directed a verdict for defendant
and rendered judgment in its favor dismissing the complaint
with costs.   The plaintiff assigns error in directing a ver-
dict.

Among other claims of negligence the plaintiff avers in his
complaint that the defendant failed to furnish a safe place
and safe appliances, in consequence of which he was injured.
The injury occurred March 25, 1912.

The defendant purchased the logs in question in carload
lots from a corporation, namely, the Mellen Lumber Com-
pany, under a contract which provided that the Mellen Lum-
ber Company "agrees to sell and deliver to the *Menasha Pa-
per Company* (in 500 to 750 thousand feet, log scale)
merchantable hemlock saw logs, cut into lengths from 10 to
16 feet f. o. b. Soo line, at points between Glidden and
Ashland, Wisconsin, and Mellen and Hurley, securely loaded
on cars, properly staked, according to regulations of the rail-
road company."

It is admitted in the pleadings that the defendant was at the time of the employment and injury a corporation engaged in the manufacture of pulp and paper at Ashland, Wisconsin, and that on the 25th day of March, 1912, while plaintiff was so employed, he was seriously injured. The answer alleges that the cars were loaded in the usual and customary way, and that the car which plaintiff was unloading at the time of the injury was not owned, loaded, or equipped by defendant, but was furnished by the Soo Railroad, which is a common carrier.

The evidence produced upon the trial tends to prove that the logs were bought from the Mellen Lumber Company, under the contract above referred to, loaded on cars. They were delivered at the defendant's plant on cars, and the plaintiff was directed by defendant to unload them and was engaged in unloading in the manner ordered when injured. The cars were flat cars, and the logs were held on by means of stakes on each side of the car about eight feet high. There were two tiers of logs, the first extending about three feet above the platform of the car, and wires fastened to the stakes extending across the logs, and another tier above this fastened with wires in the same manner. The logs were being unloaded from the car on a rollway about as high as the platform of the car. The operation of unloading was carried on by first cutting the wires attached to the stakes, then cutting the stakes nearly off, the middle one first, then the end ones on the side of the car where the logs were to roll off. Skids were extended from the car to the rollway to carry the logs over. There was a three-foot space between the car and the rollway. After the stakes were cut nearly or part way off, the logs were pressed down or started with a cant hook so they broke the stakes down and rolled off. Generally fifteen logs roll off at once when the stakes give way. Plaintiff was working under the immediate order of the defendant's fore-

man, who was hurrying him in the work. Plaintiff cut the middle stake, then one end stake, and was cutting the other end stake when it broke with a crash, and instead of breaking away from the car it fell towards plaintiff and struck him on the head, causing the injury. The stake was forced toward plaintiff by a knot on a log pressing against it. It was partly rotten. There was quite an unusual crack when the stake broke. When a load is giving way it gives warning by a crack or noise caused by the logs rubbing together, and the crack of the stakes gave warning on the instant occasion. When plaintiff cut the last stake part way off and stepped back four feet from the end of the car the foreman told him to go back, give it a crack and get them a little looser, and see if you can't do anything. Plaintiff went back to "give it a crack" and the logs started to break down, and in getting away plaintiff stepped on a piece of wood or log which rolled under his feet and he bumped against the skidway and the stake hit him. There is also evidence of an expert to the effect that the method of unloading pursued at the time of the injury was extremely hazardous and that there was a safer way in common use by which the stakes could be removed by a device without cutting them or getting in front of the rollway as the logs were about to roll from the car. It also appears from the evidence that when logs are loaded and fastened by wires as those in question were, the unloading must be done in the manner it was being done at the time of the injury, and cannot be done in the safer way described. It is therefore urged that, because defendant had nothing to do with loading the logs and had no control over such operation, it is not responsible for negligence in loading, or failure to load so that they could be unloaded with safety. In other words, that defendant not having created the unsafe condition is not liable for it; that the logs were not loaded by defendant. The cars did not belong to defendant. They were loaded under contract forty miles away, and the method of

loading was not under the supervision or control of defendant, and after loaded the defendant could not use the safety device for unloading testified to.

The important question raised by respondent's contention, therefore, is the construction of parts of ch. 485, Laws of 1911, namely:

"The term 'safe' and 'safety' as applied to an employment or a place of employment shall mean such freedom from danger to the life, health or safety of employees or frequenters as the nature of the employment will reasonably permit." Sub. 11, sec. 2394—41, Stats. 1911.

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees and frequenters." Sec. 2394—48, Stats. 1911.

"No employer shall require, permit or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees and frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe." Sub. 1, sec. 2394—49, Stats. 1911.

Before this statute was passed, this court held that it was the duty of the master to furnish the servant with a reasonably safe place in which to work, and that that duty is absolute. *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48. The statute under consideration seems to emphasize that duty, and specifically provides that every employer shall fur-

nish employment which shall be safe for the employees and
furnish a place of employment which shall be safe for em-
ployees therein, and that no employer shall require, permit,
or suffer any employee to go or be in any employment or place
of employment which is not safe, and no employer shall con-
struct, occupy, or maintain any place of employment which
is not safe. The statute defines the words "safe" and
"safety" as meaning such freedom from danger as the nature
of the employment will reasonably permit. If, therefore, the
place be not as free from danger as the nature of the em-
ployment will reasonably permit, and the danger is patent,
the employer cannot justify himself by showing that he did
not construct the dangerous place. It is sufficient to charge
him with responsibility if he occupies or maintains it or per-
mits employees to work in it. *Gager v. Stolle-Barndt L. Co.*
149 Wis. 154, 135 N. W. 490; *Koepp v. Nat. E. & S. Co.*
151 Wis. 302, 139 N. W. 179.

The foreman of defendant was present directing the per-
formance of the work and was familiar with the situation and
dangers attending its performance, and the evidence is ample
to entitle the jury to find that the employment was not as
free from danger as the nature of the employment would rea-
sonably permit, and that there was in common use, known to
the defendant, or which in the exercise of ordinary care
should have been known to him, a safe method of doing the
work. It is unnecessary to consider here the authorities to
the effect that, where an appliance or place to work is con-
structed by a third party and furnished to the master and
free from patent defects, the master is not responsible for
latent defects, nor the class of cases holding that the master
may use the appliances in common use although they may not
be the most safe appliances. Such cases have no application
under the statute we are now considering. *Ballou v. C., M.
& St. P. R. Co.* 54 Wis. 257, 11 N. W. 559.

The statutes heretofore quoted in connection with the statute abolishing the defense of assumption of risk make it clear that the employer cannot defeat recovery by showing that he furnished appliances in common use, or that he did not construct the place or appliance, but received it from another with knowledge, or chargeable with knowledge, that it was not safe.

The statute in unequivocal terms requires the employer to furnish employment which shall be as safe for the employees as the nature of the employment will reasonably permit, and also forbids the employer to permit the employees to work in an unsafe place. This language leaves no room for construction, or question as to legislative intent. It is therefore the duty of the court to give it effect, and not defeat it by judicial construction contrary to its clear import. *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179.

It follows that the case should have been submitted to the jury, and that the court erred in directing a verdict.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.

SIEBECKER, J., dissents.

The following opinion was filed October 13, 1913:

VINJE, J. (*dissenting*). I concur in the view of the trial court that "there is nothing in the evidence to show that the defendant was negligent in failing to furnish a proper place to work or a proper car or stake" and that "the injury was due to an accident that could not by reasonable care and diligence have been foreseen." The defendant received from a common carrier carloads of logs, loaded in a usual and customary manner, and proceeded to unload them in such manner. There was nothing to indicate anything unsafe or un-

usual in the stake that broke, and defendant no more than plaintiff could have reasonably anticipated that it would fly at right angles to the direction of the pressure of the logs upon it.

I am also unable to construe the statute in question as requiring a master to use the latest and most effective safety appliances in all cases, which, as I understand it, is practically the construction put upon it by the court. The statute requires only such freedom from danger as the nature of the employment will *reasonably* permit. Sub. 11, sec. 2394—41, Stats. 1911. To construe this to require a consignee of logs transported by a common carrier to bargain that they must be loaded upon cars equipped with the latest safety appliances, in face of the evidence that railroads never equip' their cars with such appliances, and that only a few of the heavier shippers of logs do so, and in face of the evidence that these logs were loaded in a customary and usual manner, and in a manner, I dare say, that over ninety per cent. of like forest products of the state have been loaded, seems to me to eliminate the word *reasonably* from the statute. Thus, if a man in Wisconsin receives a consignment of heavy articles which are loaded in New York in a box car, and an employee is injured in the process of unloading, and it could be shown that the unloading could have been done with perfect safety had a flat car been used instead of a box car, and that a flat car might have been used for the purpose, I do not think the consignee would be negligent under the statute because he did not in the first instance direct his consignor to load the freight on a flat car, and it seems to me that the principle which rules the one case should logically rule the other. That the word *reasonably* was used advisedly by the legislature cannot for a moment be doubted, for it took the precaution to define the terms used by it in the act and incorporated the word in such definition. It should not be eliminated by judicial construction.

In my opinion, under the evidence no negligence attached to the defendant by receiving the logs in the condition in which they were loaded, and it was guilty of none in the manner in which it unloaded them. The injury was the result of a pure accident.

BARNES, J. I concur in the foregoing dissenting opinion.