ROSHOLT, Respondent, vs. WORDEN-ALLEN COMPANY, Appellant.

*November 18—December 9, 1913.*

*Master and servant: Injury: Line of duty: Unsafe working place:*
*Statutory duty of master:, Defenses: Questions for jury: Spe-*
*cial verdict: Inconsistency: Appeal: Harmless errors.*

1. Where a helper was employed to carry planks to carpenters who
   were laying them upon a roof, but failed to supply such planks
   rapidly enough, and one of the carpenters in going for planks
   himself was injured by falling from an unsafe runway, the
   jury was warranted in finding that he was engaged in the line
   of his duty when injured.
2. The inconsistency of findings that in the exercise of ordinary
   care defendant ought to have known, but plaintiff ought not
   to have known, that plaintiff's working place was unsafe, is
   immaterial where, under sub. 1, sec. 2394—1, Stats., the de-
   fense of assumption of risk is not open to defendant.
3. Where a temporary runway upon the nearly flat roof of a build-
   ing, intended for use in carrying planks to carpenters engaged
   in laying them on the roof, was twelve feet wide and con-
   structed of planks six inches wide laid loosely upon the roof
   joists, the master would not be liable at common law to an
   employee who stepped upon the end of a plank projecting be-
   yond one of the joists and fell to the basement, because (1) a
   court or jury would not be warranted in finding the place was
   not reasonably safe and (2) the rule requiring the place of
   employment to be reasonably safe has no application to build-
   ing operations where conditions are constantly changing and
   the dangers arise from acts of the servants themselves in car-
   rying on such operations.
4. But a finding by the jury that such runway was not as free
   from danger as the nature of the employment would reason-
   ably permit, is *held* in this case to be sustained by the evi-
   dence. TIMLIN, J., dissents.
5. Ch. 485, Laws of 1911 (secs. 2394—41 to 2394—71, Stats. 1911),
   which requires every employer to furnish a place of employ-
   ment which (excepting places where persons are employed in
   private domestic service or agricultural pursuits which do not
   involve the use of mechanical power) shall be as free from
   danger as "the nature of the employment will reasonably per-
   mit," effected a radical change from the common-law rule
   which required only that the place should be reasonably safe.

Rosholt v. Worden-Allen Co. 155 Wis. 168.

6. Under said statute, as to places which from their nature cannot be made safe, or which cannot be made safe without seriously interfering with the work, the employer is required to make them only as free from danger as the nature of the employment will reasonably permit; but (subject to the exception of certain places as above noted) where the conditions are such as will reasonably permit a place to be made safe, it must be made so, regardless of the character of the employment.

7. The duty imposed upon the employer by said statute is an absolute one, and for an injury to an employee caused by its nonperformance liability of the employer follows as a matter of course, in the absence of contributory negligence.

8. The defense of contributory negligence has been taken away by ch. 599, Laws of 1913, as to actions arising after that act became effective, where four or more employees are engaged in a common employment.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

On May 22, 1912, the plaintiff was employed by the defendant as a carpenter, and was engaged in laying boards on the roof of a building then being constructed by the defendant. The boards or planks to be laid were raised to the roof and put in piles at convenient places preparatory to being matched and nailed. These planks were 2 x 6 and were twelve, fourteen, and sixteen feet long. During the early part of the work, plaintiff and another carpenter who was working with him got their supply of planks from various piles convenient to them as they went along. When these were exhausted they were supplied from a pile some distance ahead of them in the direction in which they were working. Between them and this pile of planks there was constructed a temporary runway or walk of these twelve-foot planks loosely laid across the joists of the roof, which joists were about six feet apart. The roof was nearly flat. The joists of the roof ran north and south and the planks being nailed thereto were laid east and west, as were the planks in the temporary runway, such runway being twelve feet wide and about thirty feet long. It was laid by a helper who

was employed to carry the planks to the carpenters, and in doing so he traveled back and forth over it. During the progress of the work the plaintiff went after a supply of planks, and after having picked up several boards started back. In stepping from the pile onto the runway he lost his balance, and in an effort to regain it he stepped on the end of a plank in the runway which projected over one of the joists and he fell through to the basement of the building, a distance of about thirty feet. This action was brought to recover damages for injuries sustained.

The complaint, in substance, charged the defendant with liability by reason of its failure to furnish the plaintiff with a reasonably safe place in which to do his work, failure to warn him that such runway was not reasonably safe, and failure to promulgate rules and regulations for the conduct of its employees. The case was submitted to the jury on a special verdict, which, with the answers thereto, is as follows:

"(1) Was the runway, laid by the helper upon the roof joists, sufficiently safe to make it free from danger to the employees, when carrying lumber from the place it was piled to the place it was used, so far as the nature of their employment reasonably permitted? A. No.

"(2) If you answer the first question 'No,' ought the defendant, in the exercise of ordinary care, to have known, before the accident and in time to have prevented the same, that said runway was not sufficiently safe to make it free from danger to the safety of employees when carrying lumber from where it was piled to the place it was used, so far as their employment reasonably permitted? A. Yes.

"(3) If you answer the first question 'No,' ought the plaintiff, in the exercise of ordinary care, to have known, before the accident and in time to have avoided the same, that said runway was not sufficiently safe to make it free from danger to the safety of the employees, when carrying lumber from where it was piled to the place it was used, so far as their employment reasonably permitted? A. No.

"(4) If you answer the first question 'No,' was the fact that said runway was not sufficiently safe to make it free from danger to the safety of the employees when carrying lumber from the place it was piled to the place it was used, so far as the nature of their employment reasonably permitted, the proximate cause of the injury? *A.* Yes.

"(5) Was the plaintiff required, in the performance of his duties, to carry lumber over said runway? *A.* Yes.

"(6) Did the plaintiff fail to use ordinary care while carrying the two pieces of lumber over the runway just before and at the time of the injury? *A.* No.

"(7) If you answer the sixth question 'Yes,' did such failure of such care proximately contribute to the injury? *A.* (No answer.)

"(8) What sum of money will reasonably compensate the plaintiff for his injuries? *A.* $1,500."

From a judgment entered in accordance with such verdict defendant appeals.

For the appellant there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *Charles E. Monroe.*

For the respondent there was a brief by *Rubin & Zabel,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Walmsley.*

BARNES, J. The appellant makes the following points: (1) It was error to submit to the jury the first and fifth questions of the special verdict. (2) The answers to the second and third questions are inconsistent and contradictory and both cannot be true. (3) There was no negligence on the part of the defendant. (4) It should be held as a matter of law that the plaintiff was guilty of contributory negligence. (5) The court erred in charging the jury.

1. In reference to the first point made, it is urged that it was no part of the plaintiff's duty to do the work which he was engaged in at the time he was hurt, because there was another person employed to carry the boards to the carpen-

ters, and plaintiff's duty was confined to putting the boards in place on the roof after they were brought to him.

The helper was either unable or unwilling to carry the number of boards needed, and the plaintiff was obliged to either help himself or sit down and do nothing. He was not specifically forbidden to carry boards, and by doing so he was facilitating the work of his employer. It is more than probable that he would have been censured by the foreman in charge of the work had he been found idle because the helper was not carrying the necessary number of boards.

It was, we think, under the circumstances, clearly within the province of the jury to say that plaintiff was engaged in the line of his duty when he was injured. Indeed, we think it would be quite difficult to say that his contract of employment did not contemplate that he should do the very thing which he did do when the occasion for it arose.

2. It may well be that there was no room for the jury in this case to find that the defendant in the exercise of ordinary care ought to have known that the runway was not safe, and at the same time to find that the plaintiff in the exercise of such care ought not to have known that the runway was unsafe. If, however, the third question in the special verdict was immaterial, as we think it was, then the inconsistency between the answer to it and the answer to the preceding question was immaterial.

3. This brings us to a consideration of the most important question in the case, and that is whether or not the evidence was sufficient to warrant the jury in finding any negligence or failure of duty on the part of the defendant which would warrant a recovery in this case.

It is clear that a case of common-law liability was not made by the plaintiff, for two reasons: *First.* The common-law rule required the master to furnish only a *"reasonably safe"* place in which to work. *Howard v. Beldenville L. Co.* 129 Wis. 98, 114, 108 N. W. 48. Considering the substan-

tial character of the runway and the nature of the work that was being carried on, a court or jury would not be warranted in saying that the place was not *"reasonably"* safe. *Second.* The rule requiring that the place of employment be reasonably safe was not even applicable to building operations where conditions were continually changing and where dangers arose from the acts of the servants themselves in carrying on such operations. *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 217, 125 N. W. 429, and cases cited; *Jakopac v. Newport M. Co.* 153 Wis. 176, 180, 140 N. W. 1060.

So, if any liability exists, it must exist by virtue of ch. 485, Laws of 1911 (secs. 2394—41 to 2394—71, Stats. 1911), or by virtue of some other statute of this state. Said ch. 485 is applicable beyond any doubt to all employees and all employers in this state, excepting only such as are expressly exempted from its operation.

Sec. 2394—48 requires every employer, among other things, to furnish a place of employment *"which shall be safe for employees."*

Sec. 2394—49 provides that no employer *"shall require, permit or suffer* any employee to go or be in any employment *or place of employment* which is not safe."

Sec. 2394—41, sub. 11, provides that "The term 'safe' and 'safety' as applied to an employment or a place of employment shall mean such freedom from danger to the life, health or safety of employees . .. . as the nature of the employment will reasonably permit."

Sec. 2394—41, sub. 4, provides that "The term 'employee' shall mean and include every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go or work or be at any time in any place of employment."

Sec. 2394—41, sub. 3, defines the term "employer" to "mean and include every person, firm, corporation, agent,

manager, representative or other person having control or custody of any employment, place of employment or of any employee."

Sec. 2394—41, sub. 1, provides: "The phrase 'place of employment' shall mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporary [temporarily] or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is directly or indirectly employed by another for direct or indirect gain or profit, but shall not include any place where persons are employed in private domestic service or agricultural pursuits which do not involve the use of mechanical power."

It is obvious that these provisions make some radical changes in the common law as it existed when the act was passed, and that among those changes is the abrogation of the rule referred to as having been laid down in *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429, and kindred cases. It is also apparent that the employer no longer fulfils his duty by furnishing a *"reasonably"* safe place. Instead, he must furnish one which is as free from danger as "the nature of the employment will reasonably permit." This undoubtedly refers to the physical situation. There may be places of employment which from their very nature cannot be made safe. There may be other places which cannot be made safe without seriously interfering with the carrying on of the work. As to such places, the master is required to make them only as free from danger as the nature of the employment will reasonably permit. Where the nature of the employment is such that it will reasonably permit a place to be made safe, then it must be made so regardless of the character of the employment, unless it falls within one of the classes exempted from the operation of the act. And it

might be here remarked that the employers who are exempt
from the operation of ch. 485, Laws of 1911, are not as nu-
merous as are those who are exempted from the operation
of sub. 2 of sec. 2394—1, being part of the Workmen's Com-
pensation Act as originally passed or as amended by ch. 599,
Laws of 1913.   Under the original act and the amendment
thereto, any employer of less than four employees can avail
himself of the defenses of contributory negligence and negli-
gence of a fellow-servant, while all employers under ch. 485,
Laws of 1911, must furnish the safe place of employment
therein provided for, except where the employee is engaged
in private domestic service or agricultural pursuits not in-
volving the use of mechanical power.

The language of the sections of the statute quoted is plain
and hardly open to judicial construction.   If the statute is
drastic there is no reason for thinking that it was not inten-
tionally made so.   There is not much doubt that the "Com-
pensation Act" referred to would have been made compulsory
instead of optional, were it not that the legislature either
thought that a compulsory act would be unconstitutional or
else entertained such grave doubts upon the subject that it
was considered inadvisable to experiment with a compulsory
law.   It is evident that the legislature desired that employ-
ers generally should come under the act, and that some of its
provisions were designed to make it as comfortable for them
to come in as to stay out.   Ch. 485, Laws of 1911, was in-
tended to supplement ch. 50 of the laws of the same year.

The statute in terms imposes an absolute duty upon the
employer to make the place of employment as free from dan-
ger as the nature of the employment will reasonably permit,
and in the absence of contributory negligence the liability
of the master follows as a matter of course if this duty is
not performed and injury results to the employee because it
is not performed.   Such we think is the meaning of the law
and the effect of the decision in *Sparrow v. Menasha P. Co.*

154 Wis. 459, 143 N. W. 317. The wording of the statute does not differ materially from the wording of the railroad fencing statute (sec. 1810), under which it has been held that the duty to construct a sufficient fence within the meaning of the statute is absolute. *Curry v. C. & N. W. R. Co.* 43 Wis. 665, 674, and cases cited; *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189. The duty imposed by the statute we are considering is as imperative as is the duty imposed by sec. 1636—81 (the scaffolding statute), in reference to which it was said in *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 313, 139 N. W. 179, "that the legislature intended to make employers, in the situations dealt with by the statute, absolute insurers of the safety of their employees save in cases of efficient assumption of the risk or contributory negligence;" and we think the duty imposed is as mandatory and as absolute as that imposed by ch. 396, Laws of 1911, which now appears as part of sec. 1636*jj,* and which was undoubtedly passed to change the rule of *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992, and the prior cases on which the decision in the *West Case* was based.

Following the decision in the *Koepp Case,* it was again said in reference to sec. 1636—81 that it "in terms imposes on the defendant *the absolute duty* to furnish safe, suitable and proper apparatus for raising this stack." *Bruce v. Northern B. & S. I. Works,* 152 Wis. 188, 191, 139 N. W. 729. The *Koepp Case* was again followed and approved in *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 187. Again in the opinion on rehearing in *Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 543, 138 N. W. 1016, 142 N. W. 122, it was said: "It was held in the *Koepp Case* that the legislature intended to make employers *absolutely liable* as to the safety of employees in the situation embraced in the statute (sec. 1636—81), except where the injured person assumed the risk or was guilty of contributory negligence." The word "absolute" as used in these decisions must mean

"without limitation," unless limitation is expressly made. The intent of the legislature to make a radical change in the common law and to adopt a rule of absolute liability is certainly as manifest in secs. 2394—48, 2394—49, and 2394—41 as it is in sec. 1636—81.

So in actions brought to recover damages for a personal injury under the 1911 statute, where the relation of master and servant exists, and where it is charged that there was a failure of duty to furnish a safe place for the servant to work, and where the plaintiff does not belong to the classes of employees who are exempted, the inquiry is: Was the place as free from danger to the life, health, or safety of the employee as the nature of the employment would reasonably permit? If there is evidence which will warrant a jury in returning a negative answer, a cause of action is established if the servant was injured and the injury was due to the master's failure to comply with the statute and there was no contributory negligence. This latter defense was available under ch. 50 of the Laws of 1911, but was taken away by ch. 599, Laws of 1913, as to actions arising after such act became effective, where four or more employees are engaged in a common employment.

We think it must be said in the instant case that the jury might well find that the place of employment was not as free from danger as the nature of the employment would reasonably permit. The laying of two or three tiers of planks instead of one would in all probability have prevented the accident. It is almost a certainty that the nailing down of the tier that was laid would have prevented it. So would the erection of a substantial guard rail immediately outside of the joists or purlines on which the planks rested. It may well be that there were other things which might have been done to make the place safe which the nature of the work would reasonably permit, but the enumeration given is sufficient. A jury would be well within its rights in saying

that the nature of the work would reasonably permit either of the first two things mentioned to be done, and probably the third. The jury has found that the place was not "safe" within the meaning of the statutory definition of the word, and we think the evidence was ample to warrant such a finding. This being so, the answer to the third question in the verdict became immaterial. The verdict finding, as it did on sufficient evidence, that the place of employment was not as free from danger as the nature of the employment would reasonably permit, and that the plaintiff was injured because it was not made so, and that plaintiff was not guilty of contributory negligence, every fact essential to a recovery under the statute was found.

4. The defense of assumption of hazard was abolished by sub. 1 of sec. 2394—1 as to all employees. Were it still a defense, it might and probably would defeat recovery on the part of the plaintiff. But leaving out of consideration assumption of hazard, we think there is little evidence in the record which would warrant the jury in finding that the plaintiff was guilty of contributory negligence. Certainly the jury might find on the evidence, as it did, that there was no contributory negligence on his part.

5. The appellant attacks an instruction given by the court, but under the law as laid down in this opinion the instruction complained of could do the appellant no harm whether it was right or wrong.

*By the Court.*—Judgment affirmed.

TIMLIN, J. (*dissenting*). The rule of the statute law now is that the place shall be as free from danger to the lives, health, or safety of employees . . . as the nature of the employment will reasonably permit. I believe that this rule of statute law imposes upon the master a duty which he can only discharge by bringing the place of employment within its descriptive terms; but, properly understood, I think the

law is not drastic or severe. True, it changes the common-law obligation, which was only to exercise reasonable diligence in this respect, and modifies that rather savage rule which permitted the employer to conduct his business and arrange appliances in his own way and to put those whom want and hunger compelled to seek employment from him into as dangerous a place as he chose, provided the danger was open and obvious. *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27, 71 N. W. 814. It is, however, nothing new for the law to lay down a rule of diligence which requires for its correct application the ascertainment of facts. It is no more difficult to prove that the place of employment was or was not as free from danger as the nature of the employment would permit than to prove that one's conduct equaled or fell short of that which an ordinarily prudent person would ordinarily do under the same or similar circumstances. Indeed the latter consideration, present in all negligence cases either as a question of law or question of fact, contains, when the evidence is undisputed, much more of the elements of fact than does the quoted rule of the statute. In the view I take of this case the undisputed evidence shows that the place was as free from danger as the nature of the employment would reasonably permit. A roof of this kind could not be covered except by fastening boards or plank across joists or rafters. The boards must be hauled up from below singly as laid or hauled up in quantity in advance of the laying and laid in piles ahead of the covering work. No permanent runway from the piles of lumber to those engaged in fastening down plank could be constructed because the situation was constantly changing as the covered portion progressed toward the remainder of the unused piles of plank. The nature of the work would not reasonably permit a permanent runway. In the light of afterthought only three possible variations from the method actually employed are suggested: (1) that the planks in the runway be nailed down; (2) that a balus-

trade or side railing be made along the runway; (3) that a double layer of planks might have been laid in the runway. The first I think would be unreasonable because of the constant change, and the nailed-down planks would have to be continually ripped up and would have been impaired for roof boards by the nail holes. The railing would have to be sawed off or otherwise shortened every time the carpenters advanced with their covering, and extended every time a pile of lumber was exhausted and it became necessary to move to another pile. There could be no doubling of the planks in the runway without at some stage of the work running short of enough plank to cover the roof or bringing up a surplus of plank for runways. The doubling of the planks would not be any safer to one who stepped a little farther outside of the supporting joist or rafter. These suggestions made in the majority opinion seem to me impractical and unreasonable, and I do not think that is the proper way to apply the statute. Almost every conceivable kind of work may be done in any one of several methods, and I think when it appears the place of work is being constantly changed by the authorized acts of the workmen engaged and for the purpose of carrying on the work and such workmen adopt a method usually and ordinarily safe, the place is as free from danger as the nature of the employment will reasonably permit. If the court or jury are allowed to speculate after the fact upon other possible modes of doing the work which might or might not have been safer and might have prevented the particular injury, but caused some other danger or some serious obstruction of the work, there is a lack of conformity to the statutory rule, because that rule only requires the place of work to be made as safe as the nature of the work will *reasonably* permit.

This case should be governed by *Lueckel v. Preston,* 154 Wis. 429, 143 N. W. 173, and it is distinguishable from *Sparrow v. Menasha P. Co.* 154 Wis. 459, 143 N. W. 317,

for the reason that in the latter case the place and manner of unloading were imminently dangerous. Logs were piled up on a flat car and the pile supported by side stakes. The employee was required to go along the side of the car and cut these stakes with an ax near the base so that the weight of the pile of logs would break the stake off and cause the logs to roll down over the side of the car at which the stakes were being cut and the employee was at work; the latter to get out of the way as best he could after the stakes were so far cut as to begin to break.