SULLIVAN, Administrator, Appellant, vs. CHICAGO, MILWAU-KEE & ST. PAUL RAILWAY COMPANY, Respondent.

*May 25—June 13, 1916.*

*Master and servant: When servant engaged in interstate commerce: Injury: Negligence: Unsafe working place: Questions for jury: Assumption of risk: Contributory negligence.*

1. One who performs work in putting prospective subjects of interstate commerce in a state of preparedness for transportation, is not engaged in interstate commerce within the meaning of the federal Employers' Liability Act.

2. In case of an employee being injured or killed while engaged in the line of his duty as such, and recovery of damages therefor being sought on the ground of want of ordinary care of the employer, or his officer, agent, or servant, the defense of assumption of the risk is not available to such employer.

3. Under sec. 2394—48, Stats., it is the duty of an employer to furnish his employee employment and a working place as free from danger as the nature of his labor will reasonably permit, and when whether such duty was performed is material and there is room in the evidence for a finding either way, the question is for the jury.

4. Where an employee is injured while engaged in the line of his duty, and there are more than four employees working in the common employment, contributory negligence of such employee is not available as a defense against the claim of such employee for damages.

5. Where a servant of a railroad company, who is not a shop or office employee, is injured and that occurs or is contributed to by violation by such company of any statute enacted for the safety

of employees, and an action is brought to recover damages for the injury, neither contributory negligence nor assumption of the risk is available to the company as a defense.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Juneau county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action to recover for the death of plaintiff's intestate who was killed February 15, 1915, while performing his duties as an employee of defendant. The event was directly caused by a pile of lumber tipping over upon, and crushing, the deceased. The claim of plaintiff was that defendant was negligent in so permitting the lumber to be piled that it was liable to tip over and injure employees who were required to work in the vicinity thereof; that the manner in which the lumber was piled rendered the working place of employees who were so required not up to the statutory standard of safety and that such negligence was the proximate cause of the accident, or contributed thereto, in greater degree than any default of deceased.

The claim of defendant was that the lumber was piled so as to be reasonably safe as regards tipping over and injuring any one; that deceased was engaged in interstate commerce at the time he was injured, and that he was perfectly familiar with the danger, if there were any reasonably to be apprehended of the lumber pile tipping over, and assumed the risk thereof.

The evidence established this: Defendant was a railroad corporation engaged in interstate and intrastate commerce. For several years deceased had been one of its gang foremen, working in its railroad yard at Tomah, Wisconsin, under the yard foreman and other superiors. As part of the yard equipment there was a lumber shed, planing mill, and shops used for fitting up repair and construction material for the road. A stock of lumber was customarily kept on hand in the lumber shed. As it came in on cars or otherwise, it was

piled in the shed in a manner directed by the superior of deceased. Sometimes, but not customarily, he took part in so placing lumber. The stock was drawn on from time to time as required to ship to points within and without the state. When so drawn on, it was taken to the planing mill or shops and fitted up as needed and then placed on cars for shipment. The lumber was piled in the shed in a number of panels on the north, and a number on the south, side of the eighty-feet long shed so as to leave a wide alley through the center and narrow alleys between the panels. The piles were built up in tiers without any crosspieces between the boards, thus leaving each outside tier entirely independent of the others. The piles varied in height from about eight feet down. There was one pile made up of several tiers eight feet high and six feet wide. East of it there was a pile of three tiers about eighteen inches high, and east of that a pile about four feet high, leaving between the two high piles a space about forty inches. The most easterly tier of boards was lower than other parts of the low pile between the two high piles. On the day of the accident, there was a requisition for a bill of lumber of specified kinds to be gotten from the shed, fitted up as required by work thereon in the planing mill and then shipped to Western avenue, Chicago, and added to the stock of material there for use as needed. The deceased, under direction of the assistant foreman, took the requisition and, with his crew, went to the lumber shed to select the required pieces. His superior accompanied him. After working some time, he, with the assistant foreman, came to the place where the accident occurred. He stepped on the most easterly tier of boards, which was lower than the pile between the two high piles, and stood there checking over the requisition with reference to further requirements. While so doing the assistant foreman took several boards from the tiers between the two high piles and pushed them to assistants outside of the shed to be taken to the mill. He then laid hold of a

board, which proved to be fast at one end, or in some way, in the high or a near-by pile, at the side of deceased. The latter took hold of the board and lifted on it, when the pile west of him tipped over upon and crushed him. It was customary to use strips between the tiers of boards standing by each other to prevent falling over, but no such precaution had ever been taken by defendant in the particular shed. The deceased had nothing to do with piling the tier of boards which fell over. He had not been in the shed before for some time. The particular pile was rather higher than usual. Commonly carpenters would go into the shed and, by taking boards out of the piles, disturb their order, somewhat, and leave them, which was liable to make such piles unstable. The condition of the particular pile, and those in the vicinity, was plain to be seen by a person circumstanced as deceased was. He was familiar with work of the kind he was engaged in when the accident occurred. It was in the regular line of his duty as foreman of the yard gang having to do with such work.

At the close of the evidence, the court directed a verdict in favor of the defendant upon the ground that the deceased was engaged in interstate commerce when he was injured and he assumed whatever risk there was growing out of the manner the lumber was piled. Judgment was rendered for defendant on the directed verdict.

For the appellant there was a brief by *Donovan & Gleiss,* attorneys, and *Grady, Farnsworth & Kenney,* of counsel, and oral argument by *W. H. Farnsworth* and *Wm. M. Gleiss.*

For the respondent there was a brief by *C. H. Van Alstine* and *H. J. Killilea,* and oral argument by *Mr. Killilea.*

Marshall, J. The question presented here is this: Is labor in the preparation of material or articles designed to be, when ready therefor, transported from the state where such labor is performed to another state, for use of the carrier when needed, a part of interstate commerce?

In deciding the question suggested, it will promote clearness to abstain from more than referring, briefly, to cases where the federal supreme court has had to do with the matter. There are several classes,—those which deal with labor on instrumentalities of interstate transportation; those which deal with subjects of interstate commerce; those which deal with prospective subjects of interstate transportation, and others. Authorities as to one class, often do not aid much, if at all, in solving a controversy falling within another. Here we have to deal with, *When do movables become the subject of interstate commerce so that work in respect thereto is a part of such commerce? Do they so become while the work of preparation therefor is still in progress?* If so, it is easy to see that such commerce reaches out so far as to include a large part of manufacturing business. It would lead to the conclusion that whenever a person is at work in the production of anything for transportation outside his state, he is engaged in interstate commerce. That would include a miner working in the mines, lumbermen working in the woods, a factory employee, and any other of many classes of persons which might be named, in case of the purpose being to produce something for interstate transportation. That result would be so unreasonable as to condemn the idea utterly.

Without going into the technique of the matter, we will state our conclusion to be that work of preparing articles for interstate commerce is not a part of such commerce within the meaning of the federal Employers' Liability Act, and that such conclusion is required by the logic of *Shanks v. D., L. & W. R. Co.* 239 U. S. 556, 36 Sup. Ct. 168; *Coe v. Errol,* 116 U. S. 517, 6 Sup. Ct. 475; *The Daniel Ball,* 10 Wall. 557, 565; *U. S. v. E. C. Knight Co.* 156 U. S. 1, 15 Sup. Ct. 249; *Delaware, L. & W. R. Co. v. Yurkonis,* 238 U. S. 439, 35 Sup. Ct. 902; *Zavitovsky v. C., M. & St. P. R. Co.* 161 Wis. 461, 154 N. W. 974.

*Delaware, L. & W. R. Co. v. Yurkonis* is particularly in point. It was there held that an employee of a railroad, min-

ing coal with which to operate its locomotives used in interstate commerce, is not engaged in such commerce, or work so closely related to it as to be a part thereof.

*Coe v. Errol* seems to declare the rule we have stated. It excludes from the field of interstate transportation all preliminary work in putting property in a state of preparation and readiness therefor.

By leaving the matter concisely disposed of as we have, the federal supreme court, if it shall be called upon to deal with the matter, can do so with a minimum of labor, a clear understanding of the precise situation presented, and this court's opinion in respect thereto.

The trial court having erred in directing the verdict upon the ground that deceased, when injured, was engaged in interstate commerce, the judgment must be reversed unless it clearly appear to be right upon some other ground.

The defense of assumption of the risk was not available to defendant. Sub. (1), sec. 2394—1, Stats.

Under the comprehensive requirement of sec. 2394—48, Stats. 1915, as regards the duty of employers to protect their employees from danger of personal injury, the question of whether respondent was actionably negligent was for the jury. *Sparrow v. Menasha P. Co.* 154 Wis. 459, 143 N. W. 317; *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650; *Kelly v. Kneeland-McClurg L. Co.* 161 Wis. 158, 152 N. W. 858.

The evidence showed that there were more than four employees working in the common employment. So the defense of contributory negligence was not available to respondent. Sub. (3), sec. 2394—1; *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650.

If respondent was negligent, it was evidently because of failure to comply with sub. 1, sec. 2394—49, Stats., which was enacted for the safety of employees, and it is also evident that the deceased was neither a shop nor office employee. So

it does not seem material whether the case falls under sub. (3), sec. 2394—1, or sec. 1816, Stats. It falls under one or both. In neither case would the defense of assumption of the risk, or contributory negligence, be available to respondent. Therefore the judgment is wrong from any viewpoint we can take of it.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.