NEITZKE, Respondent, vs. KRAFT-PHENIX DAIRIES, INC., Appellant.

*February 8—March 6, 1934.*

442

For the appellant there was a brief by *Genrich & Genrich* of Wausau, attorneys, and *Eugene L. McIntyre* of Milwaukee of counsel, and oral argument by *Mr. Fred W. Genrich* and *Mr. McIntyre.*

For the respondent there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Claire B. Bird.*

FAIRCHILD, J. Every employer is required by sec. 101.06 of the statutes to furnish a place of employment safe for employees and frequenters and to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, "and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." The employees of an independent contractor doing work upon the premises are "frequenters" within the terms of that statute. *Sandeen v. Willow River Power Co., ante,* p. 166, 252 N. W. 706.

The appellant, upon whom the obligation of preparing the place of employment rested, maintained thereon uncovered choke coils. These coils were fixed between poles at a height of some thirty feet above the ground and carried 2,300 volts of electricity. For ordinary uses, because of the location of the coils, they did not endanger the employees or frequenters on the premises. The level at which employment was carried on was below the coils, and the situation was such that as long as this condition obtained there was reason for holding that appellant had met the obligations imposed upon it by statute. But when the owner employed an independent contractor to erect a smokestack one hundred and twenty-eight feet high, with guy wires attached at elevations of ninety-one feet and one hundred and sixteen feet, respectively, and anchored at a point on the ground eighty-seven feet from the base of the smokestack, it brought into the condition a new level of operation that made likely the contact of employees or frequenters with the coils. When the likelihood of this contact was imported the choke coils became a dangerous instrumentality, since it was then probable that those handling the guy wires would come in contact with the coils.

It is urged that this did not make the premises unsafe since the independent contractor could avoid contact with the dangerous instrumentality by running the guy wires to

anchors not in line with the choke coils, and because the independent contractor had full knowledge of the presence and uncovered condition of the coils; and the further consideration that if the premises became unsafe, it was solely through the act of the independent contractor. It is true that when the owner has done everything necessary to render his premises reasonably safe and to provide against injuries resulting from acts which he could reasonably foresee, his duty to employees and to frequenters is fulfilled. On the other hand, when the employer knows that a dangerous instrumentality which he has located in the "place to work" is to be brought within the range of the operation to be engaged in by those properly on the premises, he is liable for failure to reduce to a minimum the possibility of danger from that instrumentality.

A reasonable interpretation of the statute as it applies to frequenters is that the employer's duty is to make the premises safe for the performance of acts which he knows or reasonably should know are going to be performed thereon. There are early decisions cited by appellant to the effect that the statute does not make the owner an insurer or absolutely liable for all injuries to employees or frequenters, but this does not preclude employees and frequenters from recovering merely because they may not have exercised the highest degree of caution, for their conduct is to be measured by the ordinary standard of care. If the employee or frequenter has lived up to that standard and is injured as the result of the unsafe condition of the place to work against which the owner of that place could reasonably have protected him, liability follows that failure on the owner's part.

There is little if any dispute as to the cause and manner of the happening of this accident. It was necessary to provide four sets of guy wires. To be effective, these wires were to be at right angles. Even if the topography of the

land surrounding the smokestack was such that the anchors for these wires could be placed anywhere that the contractor saw fit to place them, it would have been impossible to avoid bringing the wires within twenty-four feet of the choke coils. An operation with a guy wire approximately one hundred and fifty feet long, attached to the stack at a point one hundred and sixteen feet above the level of the ground, and eighty-six feet above the level of the coils, which wire was to be anchored some eighty-seven feet from the base of the stack, would result in the creation of a probability of contact with the unguarded coils and would be sufficient to bring the whole situation within the definition of "unsafe" as defined by the statute. This particular wire was placed in direct line with these coils and a probability of a contact became an actuality.

The contention that the independent contractor, the immediate employer of respondent, knew of the danger, had a duty to avoid it, and that appellant was entitled to rely on the assurance that he would perform his duty, fails because appellant's duty of providing a safe place was to the respondent, not to the respondent's employer, as far as this case is concerned. When appellant neglected to perform his duty to a frequenter, under the circumstances of this case, of providing a safe place to work, he became liable for injuries resulting, and cannot avoid liability because he warned parties other than the respondent himself. The fact, if such be the case, that respondent's immediate employer was derelict in his duty does not affect the validity of respondent's claim against the appellant, on whom rested the duty to provide a safe place to work.

Situations may arise where the premises are so changed by the independent contractor as to excuse the owner from liability. If, for instance, the dangerous instrumentality is erected by the independent contractor himself, or a defect-

ive scaffolding is installed, the owner may not be liable for the injuries resulting. Or, if the independent contractor conducts his work, unknown to the owner, in a manner so unusual and at variance with the customary methods of doing that work that because of it an existing instrumentality becomes dangerous and renders the premises unsafe, the owner may be free from liability.

Under the evidence presented in this case, however, the choke coils existed at the time the independent contractor started his work. They were a potential menace from the time of their installation, harmless as to appellant's employees because of their elevation and removal from likelihood of employees or frequenters coming in contact with them. They became a real and immediate danger when work was inaugurated which placed the coils in the probable line of operation. This resulted when the independent contractor built the smokestack, using customary methods for such construction. Appellant knew the choke coils were there, knew the smokestack was being built in their proximity, and that guy wires would be used. *Sparrow v. Menasha Paper Co.* 154 Wis. 459, 143 N. W. 317; *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650; *Washburn v. Skogg,* 204 Wis. 29, 233 N. W. 764, 235 N. W. 437.

The assumption of the risk incident to the employment does not affect respondent's right of recovery. The question is whether his conduct was such as to warrant the jury's finding him free from contributory negligence. If, knowing the danger, respondent had a choice of ways in which to do his work, and carelessly selected a dangerous way, he would be guilty of contributory negligence. He did not know the possibilities which might result from letting the guy wire come in contact with the instruments at the top of the poles where the choke coils were located. At the time he was on the ground, one Anderson had the end of the guy wire, and

the one in charge of the work directed the change of the wire and gave the direction:

"Take it off the post and walk around east with it, or southeast until I get ready to change this wire underneath, and then we will holler when to pull it up."

When appellant attempted to assist Anderson, the sway of the guy wire brought it in contact with the coils. Anderson was killed and respondent severely burned. The respondent in an unsafe place was following the directions given to him by a proper authority, and under the evidence accepted by the jury he is not to be considered as guilty of contributory negligence. *Puza v. C. Hennecke Co.* 158 Wis. 482, 149 N. W. 223; *Beck v. Siemers,* 174 Wis. 437, 183 N. W. 157.

The jury were asked to find whether there was a failure to exercise "such care and caution as an ordinarily prudent workman ordinarily exercises under the same or similar circumstances," and were instructed by the learned trial judge as follows:

"The plaintiff owed a duty to use ordinary care for his own safety, and to that end to observe the conditions surrounding him while at work, and the structures surrounding him, and the dangers which were open and obvious to him if he were using reasonable care and caution for his own safety, and to thereupon use the care of an ordinarily prudent workman to so carry on his own work as to guard against injury to himself, so far as by such reasonable care he could protect himself.

"In other words, he was under obligation to use for his own safety all such care and caution as an ordinarily prudent intelligent workman ordinarily uses under like circumstances. You are here to say whether he failed to use that degree of care.

"If the jury become convinced from the evidence that the plaintiff was warned of the danger of any contact with the

electric coils in question, or that he knew, from his own experience, of such danger, that is a circumstance to be considered upon the question whether he failed to use ordinary care for his own safety when he so assisted in handling the guy wire as to bring it into contact with a coil.

"If he did know of the danger in question, that fact did not of itself alone make him lacking in ordinary care for his own safety because he continued to work in proximity to the substation. But his knowledge, such as he possessed, is a circumstance to be considered in deciding whether he was lacking in care of his own safety."

The instructions were sufficient and correctly stated the law. The court was correct in refusing to instruct the jury that plaintiff was guilty of contributory negligence if it was found that he knew of the danger, either as a result of warning or as a result of his own experience. The mere fact that one having knowledge of the existence of danger continues to perform his work, does not necessarily make him guilty of contributory negligence. Appellant's contention would make not only contributory negligence, but also assumption of risk, a defense. Contributory negligence exists only where the employee, with full knowledge of the existing danger and with a free choice of acting either so as to avoid that danger or so as to expose himself to it, deliberately or carelessly acts in the latter manner. When, however, he is directed by superiors to act in a way that so exposes him to the danger that, in spite of the use of ordinary care, injury results, the mere fact that he was aware of the danger does not make him guilty of contributory negligence.

Formerly, in such a case, the employer could avoid liability by showing that the employee assumed the risk of injury when he undertook to work in the unsafe place, but now it is well settled that assumption of risk does not constitute a defense in this state. Consequently, the court's

instruction that plaintiff's knowledge was a "circumstance to be considered" is correct. The only question is whether the instructions as given imposed upon the jury the duty of differentiating between circumstances wherein plaintiff's knowledge would constitute a defense and circumstances wherein it would not. It seems quite clear that they did. We are of the opinion that the verdict sufficiently met the requirements of this case, and, considered in the light of the instructions given, presents the issues to be determined.

Complaint has been made against the sufficiency of the service of the summons and complaint on August 8, 1932. That was the last day of the two-year period for serving the notice of injury and important results depend on the efficacy of that service. We have examined the record and from it have reached the conclusion that the trial court's ruling upon this matter must be sustained. Service was made upon Scheberle, who was the office manager and auditor of the appellant. It appears that for a long time the sheriff, who served the papers in this case, had served garnishee process upon appellant by delivering them to Scheberle, and that such service had in each instance been recognized as valid. The principal thus knew that Scheberle was held out as managing agent on whom service of process might be made, and appellant therefore had reason to know that the sheriff would continue to deal with that agent. Restatement of the Law of Agency, sec. 129. But further, we agree with the learned trial judge that Scheberle was a managing agent to whom process might be delivered as service upon the company within the terms of sec. 262.09 (10), Stats. This warranted the overruling of the plea in abatement and the holding that the return of the sheriff did stand as a verity in the action.

Appellant argues that respondent was not the owner of the cause of action and had no right to maintain it. This

claim is based upon the fact that respondent made a lawful claim for compensation against the Boiler Company, the independent contractor in this case, and received an award; that by virtue of the statute this operated as an assignment of the cause of action to the Boiler Company. The respondent did own a cause of action for pain and suffering and was owner of a substantial part of the balance of the claim. He had a decided interest in the cause of action, and whether the old statute, sec. 102.29, Stats., or the amendment thereto by chs. 132, 403, and 469 of the Laws of 1931, applied to the situation, makes little if any difference. As was held in *Walker v. Pomush,* 206 Wis. 45, 238 N. W. 859:

"If it were a fact or were now claimed that compensation had been paid or was payable by the employer, as indicated in *Theby v. Wisconsin P. & L. Co.* 197 Wis. 601, 222 N. W. 826, 223 N. W. 791, the trial court could protect the defendant from liability for double payment by requiring as condition of payment of the judgment that the plaintiff secure a release or other appropriate instrument relieving the defendant from possibility of liability to the employer or insurance carrier."

In addition, it may be said that the employer's insurance carrier appeared in this action and stated that it had consented that the suit be brought by respondent. This is a disposal of the matter between the parties who are interested in the ownership and avails of the claim.

With relation to other assignments of error relating to rulings upon the trial, we find no error. The controlling question related to the safe place of employment. The other issues are important, but we are of the opinion that the fundamental, conclusive character of the fact with reference to the merits of the case, justify the verdict.

As to the damages, the plaintiff at the time of the injury was an able-bodied man, forty-nine years of age, who had,

in company with others, carried on a carpenter contracting business and managed to earn an average of about $2,900 per year. His life expectancy was 21.63 years, his injuries were from serious burns and included an injury to the head, which affected the brain tissue and has resulted in an emotional instability, rendering him a nervous wreck. This condition is permanent. While the damages are substantial, we find nothing in the record calling for interference with the appraisal made by the jury.

*By the Court.*—Judgment affirmed.