Albert **HRABAK**, Plaintiff and Appellant,

and

The Fidelity and Casualty Company of New York, Involuntary Plaintiff and Appellant,

v.

**MADISON GAS and ELECTRIC COM-PANY**, a Wisconsin corporation, Defendant and Appellee.

Madison Gas and Electric Company, a Wisconsin corporation, Third Party Plaintiff and Appellee,

and

**CASSITY–RICHARDS**, Inc., an Illinois corporation, Third Party Defendant and Appellee.

No. 11815.

United States Court of Appeals Seventh Circuit.

Jan. 15, 1957.

Rehearing Denied Feb. 12, 1957.

Norris E. Maloney, Maloney & Wheeler, Madison, Wis., for Albert Hrabak.

Frank A. Ross, Jr., Spohn, Ross, Stevens, Lamb & Pick, Madison Wis., for Fidelity & Casualty Co. of New York.

John V. Ryan, Chicago, Ill., Roy B. Hovel, Sun Prairie, Wis., Clifford G. Mathys, Willard S. Stafford, Madison, Wis., Rieser, Mathys, McNamara & Staf-

ford, Madison, Wis., of counsel, for Madison Gas & Electric Co.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

Defendant Madison Gas and Electric Company was the owner and operator of a steel tower electrical transmission line located at Madison, Wisconsin. Defendant's only high voltage (69,000) system was 2.5 miles in length interconnecting the Wisconsin Power and Light Company's transmission system with defendant's Blount Street generating station.

In March, 1951, defendant contracted with Cassity-Richards, Inc. to paint the 36 towers and the dead-end structure of its high voltage system. The contract contained an indemnity clause under which Cassity-Richards, Inc. agreed to save defendant harmless from any claim on account of an injury to any of the former's employees. Plaintiff was an employee of Cassity-Richards, Inc. The Fidelity and Casualty Company of New York carried the Workmen's Compensation insurance for Cassity-Richards, Inc.

The painting of the towers commenced on July 16, 1951, with George Zehner as foreman of the crew. On August 14th, 1951, while painting one of the crossarms on a steel tower, plaintiff was severely shocked and burned. The Fidelity and Casualty Company paid, or is obligated to pay, Workmen's Compensation benefits in the sum of $23,515.83. Plaintiff sued defendant in a third party action, Wis.Stats. § 102.29, alleging violation of the Wisconsin Safe Place Statute, Wis.Stats. § 101.06, and applicable Safety Orders. The Court ordered The Fidelity and Casualty Company of New York, the compensation carrier, joined as an involuntary plaintiff. Defendant joined Cassity-Richards, Inc. as a Third Party Defendant because of the indemnity clause in their contract.

The cause was submitted to a jury upon a special verdict. The jury found defendant Madison Gas and Electric Company failed to furnish a place of employment for the plaintiff which was as free from danger to the life and safety of the plaintiff as the nature of the employment would reasonably permit, by failing to shut off the electric current flowing through either one or both of the lines at the time the crossarms were being painted by the plaintiff. The jury also found such failures was a cause of the accident and of plaintiff's injuries. The jury then found plaintiff was guilty of contributory negligence which negligence was a cause of the accident and of plaintiff's injuries. Under the Comparative Negligence law of Wisconsin, the jury apportioned the total negligence as follows: 25% to defendant Madison Gas and Electric Company and 75% to plaintiff. The jury answered the four subsections as to damages. As plaintiff's negligence exceeded 50% of the total negligence, the District Court rendered judgment for the defendant.

Plaintiff was an experienced industrial painter. He joined the crew which was painting the towers on August 13, 1951. On the following day he was shocked and burned on the first tower upon which he worked. These towers were sixty feet high, each with three crossarms. The top crossarm extended out four feet five inches, and the middle arm eight feet nine inches. The procedure for painting the middle crossarm was described by witnesses as follows: The painters got down on their bellies and crawled to the end of the arm underneath the conductor suspended from the top crossarm, there being a vertical clearance of two feet ten and one-quarter inches. The painters then worked their way slowly backward scraping and brushing; they then again crawled to the end of the crossarm and painted the arm as they inched backward. The middle crossarm was supported by two tension braces suspended down from the tower with one attached at the end of the middle crossarm and the other at a point about midway on the crossarm. A painter had to crawl around these braces on a space only six inches in width.

The painters knew the conductors were energized and dangerous. Plaintiff testified he suggested to his foreman Zehner that the circuit on one side of the tower be turned off while that side of the tower was being painted. Zehner replied he had conferred with defendant's agents who told him the lines must be kept open to Madison suburbs. Defendant could have de-energized both circuits while the dangerous parts of the towers were being painted, but to do so would have entailed an expense of about $160.00 a day for a period of six days. Defendant could also have de-energized one circuit at a time at a nominal cost. The testimony showed that subsequent to the accident, one circuit at a time was killed to permit painting the crossarms and the dead-end structure.

On the day plaintiff was injured he was observed working on the middle crossarm. Plaintiff recollects sitting down on this arm and then crawling out to the end. He had some difficulty with the tension braces and placed one leg behind the brace fastened about midway on the crossarm. As he inched his way backward scraping and brushing, and while in a prostrate position, plaintiff reached the point at which he had to move his leg from behind the brace. Apparently, while looking for the conductor overhead, he was burned, the current entering his body at his left ear. The foreman Zehner heard a loud crack and observed plaintiff in a raised position on the crossarm as though he were on his hands and knees. His head and shoulders were enveloped in an electrical flash or flame extending out some three to four feet.

Plaintiff suffered severe burns over 40% of his body. He survived three successive shock phases. The many weeks of treatments were extremely painful because plaintiff's condition was such that anesthetics could not be used during the treatment. He was in the hospital at Madison for four months, and was hospitalized in Chicago three times for plastic surgery. His hospital and medical bill amounted to $8,389.65.

This is a suit based upon diversity of citizenship and the substantive law of Wisconsin is applicable. The Wisconsin Safe Place Statute has given rise to much litigation. Prior to 1953 more than 160 cases involving that statute had been decided by the Wisconsin Supreme Court.[1]

The defense of assumption of risk is not available to the occupant of the premises. Washburn v. Skogg, 204 Wis. 29, 233 N.W. 764, 235 N.W. 437. However, contributory negligence, as modified by the Comparative Negligence Statute, is still available as a defense. Prehn v. C. Niss & Sons, Inc., 233 Wis. 155, 288 N.W. 736; Umnus v. Wisconsin Public Service Corporation, 260 Wis. 433, 51 N.W.2d 42. The main area of applicability of the Safe Place Statute relates to "employees" or "frequenters" of "places of employment" or "public buildings." Due to the operation of the Workmen's Compensation Act, the Statute today concerns chiefly the business visitor who is not an employee of the occupant of the premises.

The Safe Place Statute requires an occupant of premises to keep the place of employment as safe as the nature of employment and the place of employment will reasonably permit. The Wisconsin Supreme Court has frequently stated this standard is more "stringent" than that imposed by the common law. Sparrow v. Menasha Paper Co., 154 Wis. 459, 143 N.W. 317; Saxhaug v. Forsyth Leather Co., 252 Wis. 376, 31 N.W.2d 589; Haefner v. Batz Seed Farms, Inc., 255 Wis. 438, 39 N.W.2d 386. That court stated the rule as follows: "The statute imposes an absolute duty to make the place as safe as the nature and place of the employment will reasonably permit. Performance of the common-law duty to make it reasonably safe does not suffice." Mullen v. Larson-Morgan Co., 212 Wis. 52, 57, 249 N.W. 67, 69.

1. 1953 Wisconsin Law Review, page 311.

■ The employees of an independent contractor are "frequenters" within the meaning of the Safe Place Statute requiring an employer to furnish a place of employment for employees and "frequenters" as free from danger as the nature of their employment and of their place of employment would reasonably permit. Neitzke v. Kraft Phenix Dairies, Inc., 214 Wis. 441, 445, 253 N.W. 579.

In the Neitzke case, open high tension electrical coils were located some thirty feet above the ground level and were ordinarily safe for employees and frequenters on defendant's premises. However, defendant had employed an independent contractor to erect a smoke stack 128 feet in height with guy wires attached which were anchored at points on the ground. The court held a situation was created so that those handling the guy wires might come in contact with the coils and the coils thus become a dangerous instrumentality, and it was the duty of the defendant company under the Safe Place Statute to reduce to a minimum the possibility of danger therefrom. The court said, 214 Wis. at page 446, 253 N.W. at page 581: "It is true that when the owner has done everything necessary to render his premises reasonably safe and to provide against injuries resulting from acts which he could reasonably foresee, his duty to employees and to frequenters is fulfilled. On the other hand, when the employer knows that a dangerous instrumentality which he has located in the 'place to work' is to be brought within the range of the operation to be engaged in by those properly on the premises, he is liable for failure to reduce to a minimum the possibility of danger from that instrumentality."

In view of the instructions of the court on contributory negligence hereinafter mentioned, the Neitzke case is important. There an employee strung guy wires from the smoke stack following the directions of his superior, but the court held the employee was not guilty of contributory negligence even though the danger of contact with the electrical coils was obvious. The court said, 214 Wis. at page 450, 253 N.W. at page 583: "The mere fact that one having knowledge of the existence of danger continues to perform his work, does not necessarily make him guilty of contributory negligence. Appellant's contention would make not only contributory negligence, but also assumption of risk, a defense. Contributory negligence exists only where the employee, with full knowledge of the existing danger and with a free choice of acting either so as to avoid that danger or so as to expose himself to it, deliberately or carelessly acts in the latter manner. When, however, he is directed by superiors to act in a way that so exposes him to the danger that, in spite of the use of ordinary care, injury results, the mere fact that he was aware of the danger does not make him guilty of contributory negligence."

In the case at bar, plaintiff testified that he received instructions from the foreman Zehner before he started painting on the tower. Part of the instructions were: "On the middle crossarm he told us to 'get down on your belly and crawl out to the end of the arm. Be very careful. Stay away from that conductor.'" It is apparent that in crawling to the end of the arm and then inching back while scraping and brushing, plaintiff was following the instructions of his superiors.

■ The Wisconsin Supreme Court often has held that continuing to work in a known unsafe place in substantially the manner directed by the employer, is assumption of risk and not contributory negligence. Vogelsburg v. Mason & Hanger Co., 250 Wis. 242, 245, 246, 26 N.W.2d 678; Mennetti v. West Side Businessmen's Ass'n, 246 Wis. 586, 591, 18 N.W.2d 487; Neitzke v. Kraft-Phenix Dairies, Inc., 214 Wis. 441, 449, 450, 253 N.W. 579; Puza v. C. Hennecke Co., 158 Wis. 482, 149 N.W. 223; Besnys v. Herman Zohrlaut Leather Co., 157 Wis. 203, 214, 147 N.W. 37.

■ In ordinary negligence cases it probably is unnecessary for the trial

court to differentiate between assumption of risk and contributory negligence. However, in cases involving the Safe Place Statute, which abolished the defense of assumption of risk, it is imperative that such distinction be clearly defined. Plaintiff made a formal request that such an instruction be given. We think the learned trial judge committed error in not complying with such request. Cf. Beck v. Siemers, 174 Wis. 437, 442, 183 N.W. 157, 159.

It is true that in four lines of the Court's instructions the Court stated that contributory negligence exists only where the employee with full knowledge of the existing danger and with a free choice of acting, deliberately or expressly exposed himself to the danger. However, two full paragraphs of the instructions were applicable to the ordinary case of negligence, where no dangerous instrumentality was maintained. This emphasis upon the ordinary situation may well have caused confusion in the minds of the jurors, especially since the Court did not point out that continuing to work in a dangerous place in a manner directed by his superiors did not, of itself, amount to contributory negligence by the plaintiff.

In Umnus v. Wisconsin Public Service Corporation, 260 Wis. 433, 51 N.W.2d 42, the deceased, while wheeling a wheelbarrow, fell through a 38x30 foot hole in a roof of a building under construction. The Court held the Safe Place Statute draws no distinction between obvious and hidden danger and stated, 260 Wis. at page 440, 51 N.W.2d at page 46: "Furthermore, a person required to work in a place of danger is not required to give that undivided attention to the danger which threatens him as is required of a person with nothing to distract his attention from it." To the same effect, Cook v. Wisconsin Telephone Co., 263 Wis. 56, 63, 56 N.W.2d 494. The trial court declined to give plaintiff's requested instruction embodying the above rule. We think it should have been given.

There is testimony in the record that it was not safe for a human being to approach within 16 inches of the energized wires or conductors hereinbefore described. The evidence further showed that a man working in a prone position would occupy about one foot of space up from the crossarm. Therefore, at the point occupied by the conductor there was only a small clearance between the plaintiff and the dangerous area. As far as this record discloses, the only contributory negligence attributable to the plaintiff is that he raised from a prone position for some purpose, probably to look for the dangerous wire behind him.

■■ We think the trial court erred in rejecting plaintiff's requested instruction that defendant could not delegate its duty under the Safe Place Statute. In response to a question of a juror the Court stated that the right to delegate such duty was a jury question. The rule in Wisconsin is that the owner or occupant is absolved of his duty only if he relinquishes complete control of the premises to the contractor and that the premises are then in a safe condition. Potter v. City of Kenosha, 268 Wis. 361, 374, 68 N.W.2d 4; Criswell v. Seaman Body Corp., 233 Wis. 606, 618, 290 N.W. 177. There is no contention here that defendant gave control of the premises to Cassity-Richards, Inc.

■ The trial court gave an instruction as follows: "There were two high tension circuits on this tower, one on the street side and the other on the property side of the tower. It has not been suggested or claimed by the plaintiff that the Madison Gas and Electric Company either should or could reasonably have disconnected both circuits while this tower was being painted. * * * It is, however, the claim of the plaintiff that on this particular morning when Hrabak was injured the Madison Gas and Electric Company should have had the circuit on one side or the other of the tower disconnected. This man was injured early on the morning of August 14, which was a Tuesday. * * * There is nothing in the record to indicate that the Madison Gas and Electric Company

had any notice that the painters were working on this tower at approximately 7 o'clock in the morning of August 14. * * * You are, therefore, instructed that in the absence of a notification from the painting contractor or his employees that the men would be working in proximity to the high tension lines at a particular time, or in the absence of a request to the Madison Gas and Electric Company that on such occasion one or another of the lines be de-energized, you cannot find that the Madison Gas and Electric Company has violated the Safe Place Statute by failing to disconnect one or the other of its lines." This instruction was clearly erroneous. It was tantamount to a directed verdict. It appears from the record that the defendant did have constructive knowledge that the painters would be crawling underneath conductors on the poles with only a vertical clearance of two feet, ten and one-quarter inches, because the painting contract was negotiated on the assumption that the painting would be done while the lines were hot. Furthermore, defendant's maintenance superintendent had made frequent visits and observations of the methods used by the painting crews. He was aware that the only method being used was for the painters to crawl under the conductor where there existed a clearance of less than three feet. The maintenance superintendent received reports, often daily, as to the progress of the painting. While he did not know the detail of what particular tower the painters would be working on at any particular minute, he knew the painting job was being done and he knew the painting procedure being followed by the painters.

Defendant argues that plaintiff has no cause for complaint as to the last quoted instruction because the jury found in favor of the plaintiff and against the defendant in the answers to the first two questions. Defendant asks how plaintiff can complain when the jury's answers to the first two questions were in accord with plaintiff's contentions.

It is true the instruction last quoted was directed particularly toward questions 1 and 2 of the special verdict, but it was part of the entire instructions which the jury received and after which the jury found that plaintiff was negligent and that such negligence amounted to 75% of the total negligence. This instruction which discussed the standard of care required of the defendant was almost certain to have effect on the jury's thinking as to the apportionment of the negligence between plaintiff and defendant. The instruction incorrectly stated the standard of care required of the defendant and stated it in a lesser degree than required by the Safe Place Statute. Under such circumstances we hold the instruction as given constituted prejudicial error.

■ Defendant argues that plaintiff is in no position to bring to the attention of this court alleged errors in giving or failing to give certain instructions, because it is claimed plaintiff failed to comply with Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A. This rule, in pertinent part, provides: " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

About two and a half days prior to the closing of the testimony plaintiff filed with the Court certain requested instructions. The trial court did not inform counsel of its proposed action on such requests as is required by Rule 51. We think the attention of the trial judge was sufficiently directed to such requested instructions, Fuller v. King, 6 Cir., 204 F. 2d 586, 591, and cases cited.

■ Under the circumstances of this case we think the objections made after the jury left the room were in proper time. The court stated to counsel that if they had any objections they could

make them in the absence of the jury. The Clerk then swore an officer and the jury was excused. The judge thereupon had the opportunity to hear the objections of plaintiff and did so. Inasmuch as the judge did not act favorably on such objections, the jury was not recalled, but proceeded with its deliberations. We hold the objections to the instructions were timely made.

Plaintiff alleges that the court improperly excluded certain photographs which were taken during the period when plaintiff was being treated for his injuries and which showed his face distorted with pain. We think the Court acted within its discretion after examining the photographs to have excluded them from evidence.

Plaintiff further objects that inasmuch as the insurance carrier had filed a waiver of its right to participate in the suit, that it was improperly joined as an involuntary plaintiff. It is argued that the rights of the compensation carrier were merely derivative rights, and could not affect plaintiff's tort rights.

The insurance carrier did not assign its cause of action to the plaintiff. It specifically reserved its right to share in the proceeds as provided in § 102.29, Wis. Stats. We think there was no error in joining such carrier as an involuntary plaintiff. See Slauson v. Standard Oil Co., D.C., 29 F.Supp. 497.

Defendant argues that the crossarm of the transmission tower was not a place of employment. Defendant points out that its employees never worked on those portions of the tower including the crossarms. We think that Wisconsin courts have held to the contrary. Williams v. International Oil Co., 267 Wis. 227, 230, 64 N.W.2d 817, 818; Mennetti v. West Side Businessmen's Ass'n, 246 Wis. 586, 589, 18 N.W.2d 487. In the Williams case the court said "The light pole was properly installed or placed thereon. It was, therefore, a part of the place of employment."

Judgment reversed and the cause is remanded for a new trial.