SAMPSON, Plaintiff and Respondent, v. LASKIN and another, d/b/a MILWAUKEE TERMINAL BUILDING, Defendants and Third-Party Plaintiffs and Appellants: LIBERTY MUTUAL INSURANCE COMPANY, Third-Party Defendant and Respondent. [Case No. 303.]

BYDYNKOWSKI, Administrator of the Estate of John R. Bydynkowski, Deceased, Plaintiff and Respondent, v. LASKIN and another, d/b/a MILWAUKEE TERMINAL BUILDING, Defendants and Third-Party Plaintiffs and Appellants: LIBERTY MUTUAL INSURANCE COMPANY, Third-Party Defendant and Respondent. [Case No. 304.]

*Nos. 303, 304. Argued November 26, 1974.—Decided January 7, 1975.*

(Also reported in 224 N. W. 2d 594.)

320

For the appellants there was a brief by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Bernard J. Hankin.*

For the respondent there was a brief by *Demet & Demet* of Milwaukee, and oral argument by *Francis J. Demet.*

For the third-party defendant-respondent there was a brief by *Kasdorf, Henderson, Dall, Lewis & Swietlik,*

attorneys, and *Harold A. Dall* and *Russell M. Ware,* of counsel, all of Milwaukee, and oral argument by *Mr. Ware.*

ROBERT W. HANSEN, J.   As to the defendants, the jury found them negligent with respect to maintaining the elevator in question, and found such negligence to be a cause of the death and injuries involved.  As to plaintiff, John Bydynkowski, the jury found him negligent with respect to his own safety, but found such negligence not to be a cause of his death.  As to plaintiff, Miner Sampson, the jury found him negligent with respect to his own safety, but found such negligence not to be a cause of his injuries.

*"Cause" or "legal cause."*  With the issue of causation involved, both as to any negligence on the part of the defendants and any properly found negligence on the part of the plaintiffs, we begin with the concept of causation adopted by this court and the test for causation that follows therefrom.  In this state negligence is causal if it is a substantial factor in producing the injuries or death complained of.[1]  The cause of an accident is not determined by its most immediate factor.[2]  The doctrine of proximate cause in the strict sense of that term has been abandoned for the substantial-factor concept of causation to properly express "cause" or "legal cause."[3] Consequently, there may be several substantial factors contributing to the same result.[4]  The contribution of these factors under our comparative negligence doctrine are all considered and determined in terms of percentages

---

[1] *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. 2d 194, 203, 120 N. W. 2d 95, 121 N. W. 2d 274, citing *Oelke v. Earle* (1956), 271 Wis. 479, 483, 74 N. W. 2d 336; *Pfeifer v. Standard Gateway Theater* (1952), 262 Wis. 229, 237, 55 N. W. 2d 29.

[2] *Blashaski v. Classified Risk Ins. Corp.* (1970), 48 Wis. 2d 169, 174, 179 N. W. 2d 924.

[3] *Id.* at pages 174, 175.

[4] *Id.* at page 175.

of total cause.[5] It follows that, in resolving questions as to causation in the case before us, we will apply what this court has termed ". . . the substantial-factor concept of causation, under which there may be several substantial factors contributing to the same result. . . ."[6]

*Negligence of defendants.* The sole allegations of liability against the defendants, as owners and operators of the Terminal building facility, were that they did not have the premises in as safe a condition as required by the safe-place statute,[7] and that the defendants maintained an elevator with a bypass switching device in violation of the state administrative code.[8] The jury finding of negligence on the part of the defendants with respect to maintaining the elevator is not challenged on this appeal. It is clearly sustained by the evidence as is the jury verdict that such negligence on the part of the defendants was a cause, under the substantial-factor test, of the death and injuries involved. While the presence of the bypass switch was not the most immediate factor in causing the falls involved, it was a substantial factor contributing to the result.

*Negligence of plaintiffs.* The jury found that the plaintiffs, Sampson and Bydynkowski, were negligent with respect to their own safety. That jury finding of plaintiffs' negligence is clearly supported by the evidence. As employees of an independent contractor working upon the premises of an owner, the plaintiffs had the legal status of frequenters working in a place of employment.[9]

[5] *Id.* at page 175.

[6] *Jorgenson v. Northern States Power Co.* (1973), 60 Wis. 2d 29, 34, 208 N. W. 2d 323.

[7] Sec. 101.11, Stats.

[8] Sec. IND 4.60 (1) (e), 3 Wis. Adm. Code, May, 1971, Register No. 185, which provides: "Emergency hoistway landing door and/or car gate contact bypass switch or switches are prohibited."

[9] *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 45, 168 N. W. 2d 112, this court stating: "The general rule

As such, they were under an obligation to exercise ordinary care for their own safety.[10] As to an employee of an independent contractor working on a roof, this court has said that the question becomes ". . . whether it was reasonable, under the circumstances, for the plaintiff to proceed as he did unaware of the dangers about him," adding that, ". . . where the plaintiff is preoccupied by his work, momentarily distracted or familiar with the premises, his conduct in relation to the then existing dangers may be reasonable."[11] We do not deal here with an absorption in work or momentary preoccupation that results in ". . . only a limited ability to watch out for the hazards . . . ."[12] Here the obvious and apparent hazard was created by the two workmen, not unobserved by them. The court has said that an employee ". . . obviously cannot ignore potential dangers. . . ."[13] Neither can he create them. Here the plaintiffs were in control of the conditions at the time of the accident. They placed the elevator in the particular position which exposed the drop to the bottom of the shaft. They put down the plate and they straddled the space between the elevator and the tail gate of the truck. The one who survived testified that he knew that he had grease on the bottom of both of his shoes, and that one

is that an employee of an independent contractor working upon the premises of an owner is a frequenter working in a place of employment."

[10] *Gross v. Denow* (1973), 61 Wis. 2d 40, 49, 50, 212 N. W. 2d 2, this court stating: "Frequenters of a public place or building are under an obligation to exercise ordinary care for their own safety. While assumption of risk is not a defense under the safeplace statute, contributory negligence is. . . ."

[11] *Young v. Anaconda American Brass Co., supra,* footnote 9, at page 48.

[12] *Knutter v. Bakalarski* (1971), 52 Wis. 2d 751, 756, 757, 191 N. W. 2d 235.

[13] *Young v. Anaconda American Brass Co., supra,* footnote 9, at page 47 (fn. 3).

foot slipped. One reasonable inference from the testimony is that the falls were caused by the slipping of a grease-covered shoe. Other inferences might include the plate slipping (it was found at the bottom of the shaft) or the two pushing the heavy barrel losing their balance, but all possible inferences have the plaintiffs in a position of obvious, existing peril which they created. Alternatives to the barrel-moving procedure here followed, such as the use of a smaller pickup truck or of a lifting crane or awaiting procurement of a heavier plate, certainly would have been clumsier and more time consuming, albeit less perilous. Here the plaintiffs selected the means to be used and deliberately placed themselves in a precarious position by trying to push a heavy barrel forward onto a truck, while balancing themselves over an 18-inch gap with a 26-foot open pit beneath them. The jury verdict finding negligence on the part of the plaintiffs is upheld.

However, the jury also found that the negligence on the part of the plaintiffs was not a cause of the death and injuries involved. That finding cannot stand. Under the substantial-factor test, the negligence of the plaintiffs, to wit, the acts on their part that resulted in their standing, pushing a heavy barrel, straddling an 18-inch gap over a 26-foot drop, one with grease on the bottom of his shoes, certainly was a substantial factor in causing their fall. As a matter of law, they are guilty of contributory negligence, meaning negligence that contributed to their falling as a substantial factor in causing the falling.[14] In the *Mustas Case,* involving injuries sus-

[14] *See: Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 450, 253 N. W. 579, this court describing contributory negligence as follows: ". . . Contributory negligence exists only where the employee, with full knowledge of the existing danger and with a free choice of acting either so as to avoid that danger or so as to expose himself to it, deliberately or carelessly acts in the latter manner. . . ."

tained by an employee of an independent contractor when he walked across a rough concrete floor, the jury found the plaintiff negligent in exercising reasonable care for his own safety, but, as did the jury here, found that such negligence was not causal. Setting aside that jury answer as to lack of causation, this court held: ". . . In the present case a causal connection between Mustas' failure to exercise reasonable care for his own safety to discover the ice and the concrete block is so clear by the undisputed facts that we must hold as a matter of law it was a substantial factor in producing his fall." [15] In the case before us, we hold, as a matter of law, that the negligence found by the jury on the part of the plaintiffs was a substantial factor in causing their falls to the bottom of the elevator shaft. As in *Mustas*, the jury's finding that the plaintiffs were negligent, and our holding that such negligence under the existing facts was causal as a matter of law, requires reversal and remand for a new trial on the issue of the comparison of negligence between plaintiffs and defendants. [16]

While reversal is required solely on the issue of causation as to plaintiffs' negligence, and although the new trial directed will be limited to the issue of comparative negligence, we will take up the other issues raised on this appeal.

*Administrative code.* Defendants' claim of error is to the trial court's permitting the safety engineer and state elevator inspector to testify to the violation of the state "Elevator Code." [17] They read the provisions of sec. IND

[15] *Mustas v. Inland Construction, Inc., supra,* footnote 1, at page 203.

[16] *Id.* at page 204.

[17] Particularly referring to sec. IND 4.60 (1) (e) providing: "Emergency hoistway landing door and/or car gate contact bypass switch or switches are prohibited."

35.01,[18] as controlling and referring to all provisions of the Wisconsin Administrative Code. Plaintiffs maintain the reference to "this code" pertains only to ch. 35, which is entitled "Safety in Construction," [19] relying in part on the preamble contained in sec. IND 35.001.[20] Cases cited by defendants deal with violations of safety provisions contained in ch. 35 and with injuries sustained during new construction.[21] The construction sought by defendants would defeat the indicated purpose of ch. 4, which specifies safety standards for elevators in public buildings and places of employment, as set forth in sec. IND 4.01.[22]

[18] IND 35.01, Wis. Adm. Code, providing: "**Responsibility for provision and maintenance of safeguards.** The responsibility for the provision and maintenance of the protection for a workman required under this code rests with his immediate employer, unless this responsibility is otherwise definitely assigned in the specifications or contract, and properly executed by the assignee."

[19] Ch. 35, Wis. Adm. Code, entitled "Safety in Construction."

[20] Sec. IND 35.001, Wis. Adm. Code, providing: "**Scope of code.** (1) The requirements of sections IND 35.001 to IND 35.42, inclusive, shall apply to the erection (including excavation), repair, alteration, renovation, relocation and demolition of buildings and other structures, or any part thereof, and to all operations incident to the equipping and maintenance of buildings and other structures.

"(2) By equipping, is meant the installation, repair or changing of equipment needed in the furnishing and distribution of water, drainage, light, heat, power, ventilation, communication, conveyance, radio, television, refrigeration and similar building service, and does not include the installation or changing of occupancy equipment, such as machinery (and all accessories) used in manufacturing processes."

[21] See: Bourassa v. Gateway Erectors, Inc. (1972), 54 Wis. 2d 176, 194 N. W. 2d 602, where the plaintiff was injured while working on a hospital addition. See also: Lovesee v. Allied Development Corp. (1970), 45 Wis. 2d 340, 173 N. W. 2d 196, where the plaintiff was injured when he fell from a ladder while working on the building of duplex homes.

[22] IND 4.01, Wis. Adm. Code, providing: "**General Scope.** The requirements of this code shall apply to every elevator, power dumbwaiter, material handling elevator, moving walk or moving ramp, or escalator installed in public buildings and places of

Most chapters of the Wisconsin Administrative Code pertaining to industrial regulations have preambles using the words "this code," and we do not read such references as providing that each such was to govern all other chapters. We reiterate that: "Failure to comply with a general safety order applying to places of employment promulgated by the industrial commission [now ILHR Department] constitutes a violation of the safe-place statute." [23]

*Negligence of employer.* Although Kirby Goodman, the plaintiffs' employer, was not a party to this action, a question in the special verdict was submitted to the jury as to his negligence. The jury found no negligence on his part, and defendants now claim that such employer was negligent as a matter of law. A contention similar to that here raised was presented to this court in a case involving injury to an employee of an independent contractor that resulted from the employee coming in contact with an open, high-tension, electric coil. With the claim against the owner of the premises being under the safe-place statute, as it is here, this court held the owner's ". . . duty of providing a safe place was to the respondent [the injured worker], not to the respondent's employer, as far as this case is concerned. When appellant neglected to perform his duty to a frequenter, under the circumstances of this case, of providing a safe place to work, he became liable for injuries resulting, and cannot avoid liability because he warned parties other than the respondent himself. The fact, if such be the case, that respondent's immediate employer was derelict in his duty does not affect the validity of respondent's claim against the appellant, on whom rested the duty to provide a safe

employment as defined by Wisconsin statutes. This requirement applies to both existing installations and those hereafter installed unless otherwise specified."

[23] *Grede Foundries, Inc. v. Price Erecting Co.* (1968), 38 Wis. 2d 502, 506, 157 N. W. 2d 559, citing *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. 2d 427, 434, 85 N. W. 2d 373.

place to work." [24] Under the circumstances in the case before us, we follow *Neitzke* to hold that, even if Goodman was derelict in his duty toward Sampson and Bydynkowski, that fact would not here affect the negligence claim of these plaintiffs against these defendants under the safe-place statute, with the immediate employer not a party to the action.

*Award of damages.* No issue is raised on appeal as to damages awarded for the death of John Bydynkowski since the damages were stipulated to by counsel at the time of trial. The jury award of damages in the amount of $37,500 to plaintiff Miner Sampson for pain, suffering and disability is challenged on appeal as being excessive. As a result of his 26-foot fall, plaintiff suffered a fracture of the pelvic bone, a fractured rib, a severe fracture of the heel bone, and numerous abrasions and contusions. He was hospitalized for eleven days, wore a cast for three months, wears a foot brace while working, and has pain in his leg and back. The orthopedic surgeon who treated him testified that all of the injuries healed except the heel fracture which has resulted in permanent and progressive arthodesis or stiffening. An operation on the foot was performed in December of 1970 to reduce the severe pain in his foot. The doctor further testified that Sampson will always experience pain when walking, that the type of foot injury he suffered usually produces increasing pain as the years go by and that no procedure is available to permanently correct the condition. To relieve his pain, the surgeon testified, Sampson may, in the future, have to take medication, wear special shoes, use a cane or crutches or undergo another operation. Sampson was forty-seven years of age at the time of trial and had a life expectancy of 25.4 years. Given these facts

[24] *Neitzke v. Kraft-Phenix Dairies, Inc., supra,* footnote 14, at page 447. Followed in: *Kuske v. Miller Brothers Co.* (1938), 227 Wis. 300, 277 N. W. 619, and in *Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 290 N. W. 177.

and this record, we hold the award of $37,500 damages not excessive, particularly because " '. . . unless the record discloses a substantial reason for reversing the trial court's determination that the damage question should not be retried, we should not do so.' " [25]

The jury also awarded plaintiff Sampson $17,500 for loss of earnings and loss of earning capacity, and this award is likewise challenged by defendants as being excessive. Sampson had seven years of schooling, and was a bricklayer by trade. Prior to the accident he worked as a mason and cement worker for Kirby Goodman, and did some work on his own for different contractors. After the accident he resumed working for Goodman as a foreman. There is testimony that he lost $7,743 in wages as a result of the accident, and this supports an award of that amount for loss of earnings. The basic challenge is to the additional amount awarded for loss of earning capacity. It is clear that, as a foreman, due to biannual wage adjustments under a union contract, Sampson is receiving a higher hourly wage rate, but it is likewise supported by the record, viewed most favorably to the plaintiff in support of the jury verdict, that the accident did restrict his capacity to work at his trade in that he testified he cannot put in eight hours on a scaffold as a bricklayer and that he cannot stand on a ladder. His doctor testified that Sampson's ability to perform his previous job was impaired because he cannot walk on rough ground or beams or do extended work on a plank or high ladder. While there is considerable evidence as to maintenance and construction-type work done by Sampson on properties owned by him, the record does support a conclusion that he cannot perform all tasks involved or expected of a full-time bricklayer. A jury may not infer from the permanency of an injury that

---

[25] *Gross v. Denow, supra*, footnote 10, at page 52, quoting *Korpela v. Redlin* (1958), 3 Wis. 2d 591, 597, 89 N. W. 2d 305.

there was a loss of earning capacity ". . . in the absence of some evidence, additional to permanency of injury, to support such loss . . . ."[26] Such evidence here is hardly overpowering, but it does exist in this record in the testimony of plaintiff and his doctor. This court ". . . has recognized the difficulty involved in attempting to establish future loss of earning capacity and has held that only when there is *no* such evidence will the jury be precluded from considering the issue. . . ."[27] With the ". . . quantum of proof required to sustain a finding of loss of future earning capacity . . . not as great as that required in other damage issues,"[28] we hold the award of $17,500 to this plaintiff for loss of earnings and loss of earning capacity not to be excessive.

*Insurance coverage.* Finally, the defendants claim trial court error in its dismissal of their third-party complaint against respondent Liberty Mutual Insurance Company under its policy issued to plaintiffs' employer, Kirby Goodman. The trial court dismissed the third-party complaint on the ground that defendants were not engaged in a loading operation and, therefore, were not insureds under the policy.[29] Our court has defined the word "operating" in an omnibus clause of an insurance policy, used in connection with the loading or unloading of an automobile, to refer to persons who are "actively engaged

---

[26] *Wells v. National Indemnity Co.* (1968), 41 Wis. 2d 1, 11, 162 N. W. 2d 562.

[27] *Krause v. Milwaukee Mut. Ins. Co.* (1969), 44 Wis. 2d 590, 616, 172 N. W. 2d 181.

[28] *Id.* at page 616.

[29] The policy included among named insureds: "(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof . . . ."

in loading and unloading the automobile." [30] On the issue or question of whether the defendants here were "actively engaged" in loading or unloading the truck, the *Continental Case* controls. [31] In that case a transit company employee fell from a ramp while delivering beef to a Kohls store in Milwaukee. The ramp was supplied by Kohls, but was set in position by the employee who was injured and another transit company worker. This court upheld the dismissal of an action for indemnification, holding that the furnishing of defective facilities was no part of the act of unloading and did not constitute use or operation of the truck by Kohls. [32] That there was no

[30] *Amery Motor Co. v. Corey* (1970), 46 Wis. 2d 291, 296, 297, 174 N. W. 2d 540, this court stating: "In *Lukaszewicz* [*Lukaszewicz v. Concrete Research, Inc.* (1969), 43 Wis. 2d 335, 168 N. W. 2d 581] in construing the word 'operating' in the omnibus clause, which is the key word in the definition of an additional insured for our present purpose, we stated the word 'operating' in the statute in connection with loading or unloading of an automobile meant 'participating in the loading and unloading activity.' In an automobile liability policy, as distinguished from a property liability policy, the purpose is coverage of causal negligence in the 'use' of the automobile. Persons actively engaged in loading and unloading the automobile in the commonly accepted meaning of those words are considered to be using or operating the automobile and are covered by the loading and unloading provision of the policy. . . ."

[31] *Continental National Ins. Co. v. Carriers Ins. Co.* (1972), 55 Wis. 2d 533, 200 N. W. 2d 584.

[32] *Id.* at pages 537, 538, this court holding: "Kohls' negligence consisted of providing defective unloading facilities; however, that act alone is not sufficient to make them an active participant in the unloading operation.

". . .

"Other authorities hold that the mere furnishing of the premises on which the truck is to unload is not causally connected enough to the operation of unloading or loading so as to be covered by the liability insurance on the truck. Where the injury is caused by defective docking facilities or unsafe premises, the courts have not considered such a part of the unloading or loading operation. . . ."

policy provision as to loading or unloading does not distinguish *Continental* from the case before us.[33] Loading and unloading coverage, added to an automobile liability policy, we have held, ". . . was not intended to take the place of comprehensive insurance on the premises, . . ."[34] particularly not so in safe-place cases.[35] In the present case the defendants, like Kohls in *Continental*, furnished the premises for the loading operation, and here maintained a freight elevator with a bypass switch that violated safety regulations and the safe-place statute. No employee of defendants was involved with the putting of the barrels on the truck, nor present at the time. Neither defendant and no employee of either used the truck, the elevator or the connecting plate at the time of the barrel pushing. Here, as in the *Continental Case*, it cannot be said that these defendants were "actively engaged" in the loading operation. The trial court did not err in dismissing defendants' third-party complaint against Liberty Mutual on the merits.

*By the Court.*—Judgments reversed and causes remanded for a new trial. The trial court shall find plaintiff Miner Sampson and John Bydynkowski and defendants, Arthur J. Laskin and Myron J. Laskin, Jr., causally negligent consistent with this opinion. The jury shall hear the evidence and determine the question of the

[33] *Id.* at page 538, this court stating: ". . . However, the result favored by the majority of jurisdictions is that automobile liability insurance *even under a specific loading and unloading clause* should not cover damages sustained as a result of negligent maintenance of the premises where the loading or unloading is carried out. . . .

"However, this court has adopted the majority view. . . ." (Emphasis supplied.)

[34] *Amery Motor Co. v. Corey, supra,* footnote 30, at page 301.

[35] *Id.* at page 301, this court stating: ". . . Many cases have so held by confining coverage to acts which normally considered are a part of the loading and unloading operation by way of participation therein and *excluding safe-place cases.* . . ." (Emphasis supplied.)

comparative negligence of plaintiffs and defendants. In other respects the judgments are affirmed. With one issue raised requiring reversal, and all other issues raised involving affirmance, the court elects not to award costs for this appeal to either appellants or respondents.