HELD and another, Respondents, vs. DRAEGER and another, Appellants.

*October 12—November 6, 1951.*

For the appellants there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Charles F. Smith.*

For the respondents there was a brief by *Krueger & Fulmer* of Wausau, and oral argument by *William F. Krueger.*

FRITZ, C. J.    Appeal by the defendants, Reinhard Draeger and his automobile liability insurer, from a judgment against them for Paul Held's recovery of $2,475 as damages for his personal injuries and damages to his motorcycle; and for his father, Herman Held's recovery of $830 as damages sustained by him for his payments of hospital and medical expenses, and the loss of Paul Held's services, as the result of Draeger's negligent operation of his automobile, which collided with Paul Held's motorcycle. The collision occurred on July 13, 1949, at 5:45 p. m., on a twenty to twenty-two-feet-wide graveled and traveled portion of a town road extending east and west, on the northerly portion of which

Draeger was driving his automobile westward as he approached the place where Paul Held drove his motorcycle southward on an eighteen-feet-wide private farm driveway which ran to the north edge of the town road. Paul Held testified that as he approached the town road from the north, he stopped his motorcycle three feet north of the north edge of the graveled portion of the road and looked eastward over five hundred feet along the town road but saw no automobile approaching. There was proof by testimony and photographs that from the point where Paul Held stopped on the driveway neither he nor his motorcycle was hidden from the view of a driver of an automobile going westward along the road, and that although there were some trees along the north side of the road, they were fourteen to eighteen feet north of the edge of the traveled portion of the road, and that for five hundred feet east of the driveway Paul and his motorcycle could be seen.

Herman Held and his sons, Paul and Oscar, had worked on that farm until about 5:25 p. m., and then Herman Held and Oscar proceeded to return to their home, which was some distance east of the private driveway.

Shortly before Paul Held drove on the private driveway up to three or four feet of the town road, Herman Held and Oscar rode on an open stake platform body truck southward on the driveway to the town road, and then proceeded eastward on the south half of that road. Oscar Held testified that from his vantage point on the rear platform of the truck he saw Paul stop on the driveway. Herman Held testified that about three hundred sixty feet easterly of the driveway there is an intersection with another road, and that when he got to a point on the town road about three hundred ninety to four hundred feet easterly of the private driveway, he met Draeger's automobile driven in a westerly direction on the town road at sixty-five to seventy miles per hour.

Paul Held testified that when he stopped on the driveway he saw Draeger's automobile approaching from the east, a little east of his father's truck, which would be three hundred eighty-five to four hundred feet east of the driveway, but that he could not observe its precise speed, and that he assumed it was not proceeding fast because of the intersection, because of meeting a vehicle, and because of the size and condition of the town road; and that he then proceeded south on the driveway onto the town road and crossed the center onto the south half, and turned easterly and proceeded in an easterly or southeasterly direction until he was three to four feet northerly from the south edge of that road, and twenty feet east of the east edge of the driveway, and was there struck by Draeger's automobile.

Draeger testified he was going only about forty-five miles per hour just before the collision. Herman Held and Rudy Haderlein, who arrived shortly after the collision, testified that Draeger's automobile left skid marks one hundred forty-six feet in length on the road leading back easterly from the point of the collision; and Haderlein testified the skid marks started on the north side of the road and curved over onto the south half, and ended at a point where they were met by the motorcycle tracks three or four feet from the south edge of the town road.

After the collision Draeger's automobile came to a stop about fifteen to twenty feet west of the driveway, and the motorcycle was thrown twenty feet west of where the automobile came to rest. The distance it traveled after the collision was about fifty to sixty feet, depending upon which testimony is believed.

Paul Held testified that when he saw Draeger's automobile come into the intersection, which was around three hundred seventy-five feet east of him, he could not tell whether it was coming fast or slow; that he did look to see, and it did not

seem to come fast, but he saw it coming kind of slow; and that he himself did not stay stopped but started right out; and stopped there for a few seconds and he did not know if it was a minute he stayed stopped.

On the other hand, Draeger testified that when he passed the truck near the intersection east of where the accident happened, he was going about forty-five miles per hour; that after he passed that truck he continued on on the north side for a little ways and then started turning toward the center; that he did not ever get to the center of the road before the scene of the accident or until just at the accident; that he knew there was a driveway coming out of that farmhouse and was looking ahead as he passed the truck and from there on up to the scene of the accident; that the view looking to his right from the town road to any part of that driveway is pretty near impossible to see in, and he did not see a motorcycle at any time before it got out onto the town road. He also testified:

My car was on this town road, possibly thirty feet from this driveway when I first saw this motorcycle . . . just coming out of the driveway and coming fast. I did not see the motorcycle stop at any time before it got out onto the highway. I had been looking ahead just before that and did not see any motorcycle stop at any time after it came into view and before it got onto the highway. There was nothing that called my attention to any motorcycle coming out before I actually saw it. It was coming fast and in a southeast direction, and did not ever get completely turned east, and at the time I struck it, the motorcycle was facing southeast. It's hard to tell exactly whether my car hit the side of the motorcycle but it was on the side and front wheel. I didn't turn my wheels in any direction. When I first saw the motorcycle I was on the north side of the road. Up to that time, I had not been on the left side of the road. After applying my brakes my car kind of skidded to the left. At the time my car collided with the motorcycle, it was

in the center but a little off to the left at the collision. I did not turn my wheels in any direction from the time I saw the motorcycle and the collision as I didn't have time. I didn't blow my horn as I didn't have time either. Before I applied my brakes, I was traveling at a speed of forty-five miles per hour.

The motorcycle was coming straight toward me at an angle. My car at the time of the collision did not get over as far as three or four or five or six feet from the south edge of that road. The impact between my car and the left front of the motorcycle was just to the north of the center. Up to the time that I saw the motorcycle coming out of the driveway, I hadn't seen it before at all. After the impact, my car turned around in the road facing back east, about fifteen feet west of the west edge of the driveway if the driveway extended across the road. When the skid marks began thirty feet east of the driveway they were on the north side of the road. I did not see any skid marks extending one hundred fifty or thereabouts to the east. I was about thirty feet east of the east edge of that extended part of the driveway when I applied my brakes, and this was the first time that I applied my brakes. It also was the first time that I saw the motorcycle. When I applied my brakes the motorcycle was on the north side of the roadway. It was just coming out of the driveway. The front wheel of the motorcycle was right there on the culvert on the driveway, right where the driveway and the road meets. I never did see the motorcycle on the south side of the highway. I never did see the motorcycle before the collision anywhere south of what would be the center of that town highway. It was never straightened out going east.

The testimony and photographs in relation to the location of the trees, fourteen to eighteen feet beyond the north edge of the traveled portion of the town road, and the uncontroverted testimony that Paul Held stopped his motorcycle three feet north of that north edge, where he looked to the east for over five hundred feet, but saw no closely approaching automobile, warranted the jury's findings that he was

not negligent in respect to stopping his motorcycle before crossing the near limits of the roadway, and not negligent in failing to maintain a proper lookout. However, the evidence in respect to his management and control of his motorcycle and in respect to his yielding the right of way to Draeger warranted the jury's finding that Paul Held was causally negligent in those respects.

Defendants contend that Draeger was not negligent in respect to his speed, lookout, and the management and control of his automobile, as found by the jury. As to Draeger's speed, he claims it was only about forty-five miles per hour just before he collided with Held's motorcycle. However, Herman Held testified that when Draeger drove past him east of the place where the collision occurred, he was driving at sixty-five to seventy miles per hour. And Herman Held and Rudy Haderlein testified that when the motorcycle was struck by Draeger's automobile, it left skid marks one hundred forty-six feet in length, which started on the north half of the road and curved over onto the south half, and ended at a point where they were met by the motorcycle tracks at a point about three or four feet north of the south edge of the town road; and that after the collision Draeger's car did not come to a stop until about fifteen to twenty feet west of the driveway.

In relation to the jury's finding that Draeger was negligent in respect to keeping a proper lookout, defendants' contention that the driveway was completely obscured and that there is no evidence that he could have seen the motorcycle before it got out on the town road, is refuted by evidence, in addition to facts stated above, that the photograph introduced in evidence as Exhibit "D" clearly shows that a boy seated on a scooter (which is smaller than a motorcycle) at the place where Paul Held stopped on the driveway before proceeding out onto the town road, can be seen by

the driver of an automobile approaching the driveway from the east. Moreover, there was the testimony of Herman Held, who is familiar with the terrain, that a motorcycle stopped three to four feet north of the north edge of the town road could be seen from the intersection which was three hundred sixty feet to the east.

Against the proof of those physical facts, there is only Draeger's testimony that he "didn't see" Held or his motorcycle before it got out onto the town road; and Draeger did not directly deny that Held had stopped on the driveway north of the town road.

Likewise there cannot be sustained defendants' contention that the evidence did not admit of the jury's finding that he was negligent in respect to his management and control of his automobile. That contention is based primarily upon defendants' claim that the collision occurred in the center of the town road. But that the jury could consider contrary to most of the evidence in that respect: Paul Held testified he was at a point about three to four feet north of the south edge of the town road, and twenty feet east of the east edge of the driveway when his motorcycle was struck by Draeger's automobile; Herman Held testified the skid marks of the Draeger car met the impact marks of the motorcycle at a point about three feet north of the south edge of the traveled portion of the town road; and Haderlein testified that he saw where the motorcycle tracks and the car's skid marks met, and that point was three or four feet north of the south edge of the traveled portion of the highway and twenty-two feet east of the east edge of the driveway. Thus it is obvious that in order to collide at a point twenty to twenty-two feet east of the east edge of the driveway,—if extended,—and three or four feet south of the south edge of the town road, the motorcycle must have gone southeasterly across not only all of the north half of the twenty-two-feet-wide town

road, but also almost all of the south half of such road, before it was struck by Draeger's automobile, as to which there was the testimony that it left skid marks leading back one hundred forty-six feet from the place of the collision to the north half of the road.

A traffic officer who investigated the accident an hour after it occurred and made a sketch showing tire marks, and testified there were "skive" marks in the center of the highway, but he made no examination of tire marks and no measurements and did not closely observe the skid marks. His sketch shows tire marks of Draeger's automobile leading over to the south side of the highway and the point of impact well over on that side. Draeger and his witness Ballerstein testified the skid marks ended near to or at the center of the road and at the east edge of the driveway. Thus the location of the place of impact was sharply disputed and resulted in a question for determination by the jury. Defendants claim it was undisputed that Paul Held "deliberately proceeded onto the highway into the way of this oncoming car," but there clearly was ample evidence which the jury could consider credible, against such an inference. On the contrary, under the evidence, the jury could rightly conclude that Paul Held could safely have gotten onto the south half of the graveled road and proceeded easterly if Draeger had kept his automobile on his own north half of the road; and that Draeger wrongfully invaded Held's proper south half of the road. As the jury rightly found that Draeger was causally negligent in respect to his speed and lookout, and management and control; and that Paul Held was causally negligent in respect to his management and control and in not yielding the right of way, the jury was warranted in finding that seventy-five per cent of the causal negligence was attributable to Draeger; and twenty-five per cent was attributable to Paul Held.

There was no abuse of discretion in the court's ruling refusing to allow defendants to put the witness Callies on the stand to testify after the parties had rested and plaintiffs' attorney had made part of his argument to the jury. Likewise, there was no error in the court's ruling which sustained plaintiffs' objection to the defendants' offering in evidence testimony taken on an adverse examination of Paul Held in relation to his having driven his brother's motorcycle without having an operator's license issued by the state motor vehicle department.

*By the Court.*—Judgment affirmed.