KRAUSE, Respondent, v. MILWAUKEE MUTUAL INSURANCE COMPANY, Appellant.

*No. 110. Argued October 27, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 181.)

592

594

For the appellant there were briefs and oral argument by *William L. McCusker* of Madison.

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

CONNOR T. HANSEN, J.  A number of issues have been raised on appeal:

(1) Was it error to admit evidence concerning who was driving the insured automobile?

(2) Should certain of the defendant's exhibits have been allowed as evidence?

(3) Was it error to give the emergency instruction?

(4) Was plaintiff negligent as a matter of law?

(5) Is the jury's award of personal damages excessive?

(6) Was it error to award damages for future loss of earning capacity?

### I.  *Evidence as to who was driving.*

Defendant claims it was error for the trial court to admit evidence tending to establish Mrs. Arntz was driving the insured car at the time of the accident. Defendant argues such evidence was inadmissible, indirect, and any finding made by the jury in this regard was speculative and conjectural.

The trial court permitted Hazel Siebarth, an aunt of Janice O'Leary, to testify that to her knowledge Janice did not have a driver's license. The court allowed Porter, the fiance of Janice, to testify that from 1959 until 1967 (except for a few years that she was previously married), to his knowledge, Janice O'Leary did not have a driver's license. The trial court also admitted plaintiff's Exhibit 15, a certification from the Wisconsin Motor Vehicle Department to the effect that for the four years prior to May 22, 1968, Janice O'Leary did not have a Wisconsin driver's license. All of this evidence was admitted over defendant's objections.

Defendant argues that any evidence concerning a driver's license is inadmissible in that Wisconsin cases have only allowed such evidence to establish the host's lack of experience and a guest's knowledge of it. *London & Lancashire Indemnity Co. v. Phoenix Indemnity Co.* (1953), 263 Wis. 171, 56 N. W. 2d 777; *Held v. Draeger* (1951), 260 Wis. 70, 49 N. W. 2d 750; *Canzoneri v. Heckert* (1936), 223 Wis. 25, 269 N. W. 716. However, no Wisconsin case has precluded such evidence for the purpose of identifying who was driving. This case is similar to *London & Lancashire Indemnity Co. v. Phoenix Indemnity Co., supra,* page 176, in that the evidence was not admitted to establish any lack of due care.

"Plaintiff contends that it was error to receive evidence of the fact that Miss Bloom had no driver's license and in support of its contention cites a number of cases decided by this court. They are not in point. The evidence of a violation of a statute in all of them was offered upon the theory that the failure to have the license might bear upon the question of the negligence of the violator, and in all of them it was rejected upon the ground that the violation was not shown to have had any causal relation to the accident. The testimony was offered and received in this case not for that purpose, but for the purpose of establishing the fact of the inexperience of the driver and that her guests knew of such lack. If the failure to have a license were the only circumstance proved for the purpose of establishing inexperience it would be insufficient and, if at the time of the offer of proof of that fact the court were aware that there was nothing else, we should have a different question than is presented. There was other evidence, however, as we have pointed out. On the issue of experience, or the lack of it, proper inferences are deducible from the fact that she had no license—for instance, that the violator, who should be presumed to have sought to comply with the law, might have been refused a license because of her inexperience, and that her guest should have considered that possibility along with the other facts of which they were aware. . . ."

In like manner, it can be presumed that Janice O'Leary sought to comply with the law [1] and the jury could have considered that fact when making a determination of whether or not Mrs. Arntz was driving at the time of the accident.

The trial court also allowed into testimony, over objections, the testimony of Goldie Wenger, an aunt, who testified that she had never seen her niece, Janice O'Leary, drive a car, although she did not know if Janice knew how to drive or not. Porter also testified that he had not seen Janice drive, although he did not know whether she could drive or not. Defendant claims such proof is inadmissible to show that at the time of the accident Janice O'Leary was not driving.

Both women lived in Walworth, Wisconsin, and had apparently driven to Beloit and were on their way back to Walworth when the accident occurred. Testimony was admitted over objection which established that on the day of the accident, when the two women left Walworth at about 10 or 10:30 a. m., Mrs. Arntz was driving. Defendant argues this evidence is too remote to be of any probative value, and cites a number of cases which have held various observations inapplicable. *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 146 N. W. 2d 801 (evidence of skid mark observed six hours after accident); *Neumann v. Evans* (1956), 272 Wis. 579, 76 N. W. 2d 322 (observation of speed one-fourth mile from the accident); *Ronning v. State* (1924), 184 Wis. 651, 200 N. W. 394 (observation of speed one mile from accident). However, these cases also held that the determination of whether evidence is too remote to be relevant is a matter peculiar to the trial court's discretion. It is settled law that:

[1] Sec. 343.05, Stats. "Operators to be licensed; exceptions. (1) Except as provided in sub. (2), no person shall operate a motor vehicle upon a highway in this state unless such person has a license issued to him by the department, which license is not revoked, suspended, cancelled or expired. . . ."

"Rejection of evidence because of remoteness rests in the trial court's discretion." *Rausch v. Buisse, supra,* page 166. *See also Neider v. Spoehr* (1969), 41 Wis. 2d 610, 165 N. W. 2d 171. All of the cases cited by defendant reflect this rule in that the trial court's discretion was upheld in ruling on the admissibility of the particular evidence involved. Defendant suggests this court held inadmissible the testimony of a witness in *Ronning v. State, supra,* as to his observation of speed one mile from the scene of the accident. However, the case holds that the testimony allowed by the trial court was admissible, but that this evidence, along with the rest of the state's case, was insufficient to sustain a criminal conviction.

"The witness Krippner was not in a very advantageous position at the time he made his estimate of an approximate speed of seventy miles per hour. However, we are of the opinion that such evidence, under the authorities above cited, was admissible, but that the same did not create a *prima facie* case on the subject of speed or a presumption that the speed law was violated at or immediately prior to the accident, but that such testimony merely raised an inference of fact. . . ." *Ronning v. State, supra,* pages 657, 658.

This court has adopted Rule 303 of the Model Code of Evidence:

". . . We have in the recent cases of *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, and in *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222, quoted with approval and have adopted the principles of Rule 303 of the Model Code of Evidence.
". . . Nevertheless, we have by our approval of Rule 303 concluded that, 'The judge may in his discretion exclude evidence if he finds that its probative value is outweighed' by risks incident to its admission." *State v. Hutnik* (1968), 39 Wis. 2d 754, 763, 159 N. W. 2d 733.

Rule 303 of the Model Code of Evidence is as follows:

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the

risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.

"(2) All Rules stating evidence to be admissible are subject to this Rule unless the contrary is expressly stated."

Defendant has not made any claim that the evidence submitted by plaintiff necessitated undue consumption of time; that it prejudiced or confused the jury; or that defendant was unfairly surprised by such evidence being offered. There is, therefore, no reason why this court should now hold inadmissible the evidence allowed by the trial court tending to establish that Mrs. Arntz was driving at the time of the accident.

Turning its argument around, defendant claims that in allowing plaintiff's indirect evidence to show who was driving, the trial court should also have allowed Donald Arntz's testimony that his wife knew there was an arterial stop sign governing Highway W—the inference being that Mrs. Arntz was not driving since she was aware of the stop sign and would not have ignored it. Again, the question of relevancy is within the discretion of the trial judge, and it cannot be said that failure to admit this testimony was an abuse of discretion.

Plaintiff argues that he should be given the benefit of a "presumption of continuing situation" [2] and since Mrs. Arntz was seen driving the car at 10:30 a. m. it can be presumed that she was still the driver when the accident

---

[2] " 'When the existence of a person, a personal relation, or a state of things, is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question.' " *Hilliard v. Wisconsin Life Ins. Co.* (1908), 137 Wis. 208, 211, 117 N. W. 999.

occurred about three and one-half hours later. Plaintiff further contends that defendant failed to submit proof which would rebut the presumption, and the trial court should have ruled, as a matter of law, that Mrs. Arntz was driving. Defendant argues that lapse of time, together with evidence found in the car indicating the two women had been shopping in Beloit,[3] was sufficient to rebut any presumption that the situation at 10:30 a. m. continued up until the time of the accident.

Whether or not this case requires application of a presumption of continuation, it is clear the time lapse from 10:30 a. m. until 2 p. m. and the fact that the two women were returning from Beloit where they had gotten out of the car to go shopping was sufficient to rebut any presumption that Mrs. Arntz was driving at the time of the accident.

". . . The limits of time within which the inference of continuance possesses sufficient probative force to be relevant vary with each case. Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference. In other words, it will be inferred that a given fact or set of facts, the existence of which at a particular time is once established in evidence, continues to exist as long as such facts usually do exist.

"The force of the inference is subject to the tendency of the fact toward change. The inference is extremely faint in connection with matters of intrinsic impermanency, and where a fact or condition is not reasonably continuous in its nature, there is no presumption of its continuance. Moreover, the presumption does not apply where there has been a change in conditions, or where the likelihood of a change is inherent in the thing itself. The more volatile the situation, the less reliable is the presumption of the continuous state." 31A C. J. S., *Evidence*, pp. 223–225, sec. 124(1).

---

[3] This consisted of items bought in Beloit which were found in the car at the time of the accident.

However, even though certain facts do not have the dignity of a presumption, they still have evidentiary consequence upon which a jury could base its findings.

". . . So, proof of insanity or insolvency at a particular time, is not competent to prove, on the principle of natural and probable relation, the same condition a considerable period prior thereto. But the question of whether a circumstance is of sufficient probative force to have the dignity of a legal presumption of fact, establishing the matter in controversy, *prima facie,* as in case of the rule stated, is one thing, and that of whether it is so utterly void of probative power as to be outside the realms of competency and so irrelevant, is quite another.

"It must be conceded that, while evidence of the character of that in question might not establish a condition which would raise a legal presumption running backward, if the condition were not too remote it would not be entirely without evidentiary consequence. Such consequence might be considerable under some circumstances. . . ." *Ellis v. State* (1909), 138 Wis. 513, 524, 525, 119 N. W. 1110.

The issue then becomes whether the inference of continuation—along with the rest of plaintiff's evidence, is sufficient credible evidence to support the jury's finding.

"However, under the rule we constantly cite, if there is any credible evidence, either facts or inferences which may be reasonably drawn from such evidence, which under any reasonable view supports the verdict of the jury, it must be upheld. *Vasselos v. Greek Orthodox Community* (1964), 24 Wis. (2d) 376, 377, 129 N. W. (2d) 243. On review, this court must accept the credible evidence most favorable to sustain the verdict. *Burlison v. Janssen* (1966), 30 Wis. (2d) 495, 141 N. W. (2d) 274." *Rath v. Doerfler* (1967), 35 Wis. 2d 494, 497, 151 N. W. 2d 151.

Plaintiff's proof included: (1) Janice O'Leary did not have a valid driver's license and Mrs. Arntz did; (2) only on one occasion had Janice O'Leary been seen driv-

ing a car;[4] and (3) Mrs. Arntz was driving the car when the women were last seen, about three and one-half hours before the accident. From these facts, a jury could reasonably infer that Mrs. Arntz was driving the car at the time of the accident.

## II. *Admittance of exhibits.*

Defendant argues the trial court erred in refusing to admit into evidence defendant's Exhibit 16, the Stopping Distance Chart of the Wisconsin Manual for Motorists; and Exhibit 17, a chart of the Lawyers and Judges Publishing Company, Inc., which shows the stopping distances for various speeds and various sized trucks up to 27,000 pounds.

Defendant contends its main objective in submitting Exhibit 16 was to show the jury the average "reaction time and distance traveled." However, the chart is based on the weight of an average automobile on a flat, dry surface. While "thinking" or "reaction" time may be the same regardless of the type of vehicle driven, the information concerning stopping distance takes up the bulk of the chart and is clearly not applicable to a 70,000 pound semi-truck, and it would have been unduly prejudicial to the plaintiff to admit such evidence.

The heaviest truck depicted in Exhibit 17 was 27,000 pounds and again the data represented braking capability on a flat surface. Defendant failed to call any witnesses to sponsor the admission of the Exhibit and explain how it related to a semi-truck and trailer traveling on a downgrade with a partial load of fuel oil and weighing 70,000 pounds. There was, therefore, no abuse of discretion in the trial court's not admitting Exhibit 17 into evidence.

---

[4] No effort was made by plaintiff or defendant to explain the details of when Mr. Donald Arntz saw Janice driving the car.

### III.   *Emergency instruction.*

"The emergency instruction is proper when three conditions are met:

" (1)  The party seeking its benefits must be free from the negligence which contributed to the creation of the emergency;  (2)  the time element in which action is required must be short enough to preclude the deliberate and intelligent choice of action; and (3)  the element of negligence inquired into must concern management and control. *See Gage v. Seal* (1967), 36 Wis. 2d 661, 154 N. W. 2d 354, 155 N. W. 2d 557; *Geis v. Hirth, supra.*

"*Geis* noted that the doctrine can be applied in two ways:  (1)  When the time interval is so short that the reaction is instinctive or intuitive, an emergency can be found to exist as a matter of law;  (2)  when the time element is not so short, it may still be short enough to create an issue of fact for the jury. *See Cook v. Thomas* (1964), 25 Wis. 2d 467, 131 N. W. 2d 299." *Edeler v. O'Brien* (1968), 38 Wis. 2d 691, 697, 698, 158 N. W. 2d 301.

In order to establish whether the emergency instruction should not have been given, it is necessary to review the circumstances which led up to the accident.

Highway 140, on which plaintiff was driving north, has a speed limit of 45 miles per hour for plaintiff's truck. Just to the south of the intersection where the collision took place there is a grade on Highway 140 which was described as "considerable" and "blinding," and this is borne out by the photographs admitted as evidence at the trial. Plaintiff testified that he was going between 40 and 45 miles per hour and as he approached the intersection he saw the insured car approaching on his left at a high rate of speed. He started slowing down by pumping his brakes and did so "kind of light" for fear he would jack-knife the trailer. When he saw the car was not going to stop he came down hard on the foot brake controlling the tractor and trailer brakes and the hand brake which controls the trailer brake. The ef-

fect of the hand brake was to "lock[s] everything on the trailer." After this plaintiff started blowing his horn with his left hand, and tried to miss the car by tacking left; however, the front of the tractor caught the right rear side of the car. Plaintiff further testified that the car never let up in speed any time before the impact.

A deputy sheriff testified that the crest of the hill or knoll is about 400 feet south of the intersection and that the skid marks of the truck started about 390 feet from the intersection or about at the top of the knoll. Plaintiff testified he was about 400 to 500 feet from the intersection when he realized that the car was not going to stop. Defendant argues that this was time enough for plaintiff to react, and also claims the plaintiff was negligent. However, defendant does not state any manner in which plaintiff negligently *contributed* to the creation of the emergency, nor does there appear to be any grounds to sustain such a contention. Thus, the only issue is whether the time span was too long to consider it an emergency situation.

This court has held that where a driver has had less than four seconds to act, an emergency is created as a matter of law. *Riehl v. De Quaine* (1964), 24 Wis. 2d 23, 127 N. W. 2d 788 (two seconds) ; *Papacosta v. Papacosta* (1957), 2 Wis. 2d 175, 85 N. W. 2d 790 (four seconds). In the recent case of *Vanderkarr v. Bergsma* (1969), 43 Wis. 2d 556, 168 N. W. 2d 880, a three to six second interval created a jury question on the issue, and it was impossible to say that an emergency did not exist as a matter of law.

Assuming that the plaintiff in this case was going 45 miles per hour and was 400 to 500 feet away when he saw the car was not going to stop, there was a six to seven second interval within which the plaintiff could react. The fact this interval is too great to hold, as a matter of law, that an emergency existed does not mean it was error to give such an instruction to the jury.

"When the time lapse cannot be said to be so short as to constitute an emergency as a matter of law an emergency may still exist as a matter of fact if the time lapse is still too short for deliberate and intelligent choice of action. The emergency rule is a special application of the ordinary-prudent-man rule under like circumstances treating the necessity for rapid decision as a factor 'in determining the reasonable character of his choice of action.' 2 Restatement, Torts, p. 796, sec. 296, Emergency. In an emergency the law does not require of the actor more than it is reasonable to expect of an ordinary prudent person under the same circumstances and it is considered such a person in an emergency does not necessarily make the best, safest, or wisest choice of action or inaction." *Cook v. Thomas* (1964), 25 Wis. 2d 467, 473, 131 N. W. 2d 299.

Giving the emergency instruction to the jury in this case did not constitute error.

### IV. *Jury's finding of negligence.*

Defendant claims the trial court committed error in refusing to grant a new trial on the grounds that the jury's finding absolving Krause of causal negligence was against the great weight and clear preponderance of the evidence.

Defendant argues that plaintiff was negligent as a matter of law as to both speed and management and control.

Considering first the question of speed, defendant relies heavily on his argument on the length of the skid marks and the fact that plaintiff, during adverse examination, stated he could bring the truck to a stop within a city block. Other than this evidence, there is nothing upon which to base the claim that skid marks show excessive speed. No experts testified as to what, if anything, could be concluded from them and on appeal defendant compares the skid marks to the stopping distances shown in defendant's Exhibits 16 and 17, which

were not received in evidence at the trial. Therefore, defendant did not provide the jury, nor this court, with sufficient evidence to find the plaintiff negligent as to speed.

Defendant also claims plaintiff was traveling at an excessive rate of speed in that sec. 346.57 (2) and (3), Stats.,[5] applied and plaintiff did not drive at an "appropriate reduced speed." Whether or not this section is applicable, there is again very little, if any, evidence to support the fact or permit the inference that plaintiff was driving at an excessive rate of speed as he approached the intersection. On the other hand, there is more than sufficient credible evidence to establish that the negligence of the defendant's insured was causal of the accident. Therefore, this court has no power to change the jury's verdict in this regard. *Mainz v. Lund* (1963), 18 Wis. 2d 633, 119 N. W. 2d 334. Also we find no prejudicial error committed when the trial court refused to give instructions based on sec. 346.57 (2), when the jury was given full and complete instructions on the speed of plaintiff.

Next considering the question of management and control, testimony indicated the skid marks of the truck were

---

[5] "Speed restrictions. . . .

"(2) REASONABLE AND PRUDENT LIMIT. No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(3) CONDITIONS REQUIRING REDUCED SPEED. The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway, when passing school children, highway construction or maintenance workers or other pedestrians, and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

390 feet long and started in the northbound lane of Highway 140, went over into the southbound lane for about 70 feet, and then back to the northbound lane to the point of impact. Defendant argues this indicates lack of control and that if plaintiff had gone into the southbound lane of Highway 140 he could have avoided the accident.

As already indicated, the emergency instruction was properly given and therefore the jury could have found that the plaintiff was confronted with an emergency and excused his acts which otherwise might have constituted negligence. *See Edeler v. O'Brien, supra.* Moreover, it must be remembered that plaintiff was not driving a car but a semitrailer with a partial load of fuel oil. Whether or not plaintiff should have let up on the brakes and attempted to steer clear of the car is exclusively a jury determination, and their findings on this question should not be disturbed.

## V. *Excessive damages.*

The special verdict question as to damages was answered as follows:

"*Question 7:* What sum of money will fairly and reasonably compensate Fred J. Krause for:

"(a)  His personal injuries?
     "Answer *$20,000.00*
"(b)  His medical expense to date?
     "Answer *$3,779.25* (Answered by the court)
"(c)  His damage to personal property?
     "Answer *$67.95* (Answered by the court)
"(d)  His loss of earnings to date?
     "Answer *$2,024.00*
"(e)  His future loss of earning capacity?
     "Answer *$3,220.00*"

On motions after verdict, defendant moved the award of $20,000 for "personal injuries" be set aside. The trial court affirmed the findings of the jury but did so with-

out any opinion or memorandum. On appeal, defendant argues the award is excessive.

When a jury award has been approved by the trial court, the determination on appeal is whether or not the award is within the range of reasonable amounts. Awarding damages is primarily the function of the jury and their findings will not be set aside merely because this court would award a different amount. *Bethke v. Duwe* (1950), 256 Wis. 378, 41 N. W. 2d 277; *Makowski v. Ehlenbach* (1960), 11 Wis. 2d 38, 103 N. W. 2d 907; *Wiggins Construction Co. v. Joint School Dist.* (1967), 35 Wis. 2d 632, 151 N. W. 2d 642.

"The general rule governing the trial judge or appellate court in determining whether damages are excessive is that since it is for the jury, and not for the court, to fix the amount of the damages, their verdict will not be set aside merely because it is large or because the reviewing court would have awarded less. The court relies upon the good sense of jurors to determine the amount of damages and all that the court can do is to see that the jury approximates a fair estimate. Where the question is a close one, it should be resolved in favor of the jury verdict. *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 103 N. W. (2d) 907. . . ." *Reddick v. Reddick* (1961), 15 Wis. 2d 37, 43, 112 N. W. 2d 131.

Failure of the trial judge to include his analysis of the evidence in approving the jury award deprives the plaintiff of any added benefit normally accompanying the trial court's approval.

"However, as we pointed out in *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 148 N. W. 2d 65, that where the jury's damage verdict has been approved by the trial judge, but without an opinion or memorandum setting forth the evidence underlying the verdict or a statement of the judge's rationale in supporting it, the 'abuse of discretion' test was not applicable. In the absence of the trial judge's memorandum, setting forth the rationale for his decision, we cannot assume that discretion was, in fact, exercised. In such

circumstances, as here (*see also Moritz* and *Ballard, supra*), we are obliged to review the record as a matter of first impression, recognizing, however, that all conflicts in the testimony must be resolved in support of the jury's verdict." *Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 629, 165 N. W. 2d 129.

This case, therefore, requires a review of the record with respect to the award of $20,000 for personal injuries, which covered past, present and future pain, suffering and disability.

When the accident occurred, plaintiff was fifty-eight years old. He was taken from the scene of the accident to Beloit Memorial Hospital, and the next day transferred by ambulance to Madison General Hospital. Plaintiff's family physician, Dr. James Schulz, called in a number of doctors to administer to the various injuries of the plaintiff and most of them testified at the trial.

Dr. Fred Pitts, a neurosurgeon, testified he first saw the plaintiff in Madison the day after the accident and found the plaintiff's condition to be "semi-stuporous," *i.e.,* "With stimulation he could be aroused, . . . give verbal responses to questions . . . he knew where he was. But when left undisturbed he would generally lapse off to sleep." And "[H]e had bruises about the left eye, the left upper cheek; there was some discoloration of the . . . white part of the eyeball. He complained of pains in his chest, pains in his hips." Dr. Pitts diagnosed a "moderately severe cerebral concussion" and concluded that plaintiff's brain had been affected by the injury. Craniotomy checks were constantly made for possible bleeding into the brain. Plaintiff was at times delirious, and special duty nurses had to be assigned on an around-the-clock basis from April 20th to May 8th.

Dr. Richard Hendricks, a specialist in internal medicine, testified he treated plaintiff for fractures of the ninth, tenth and eleventh ribs on the right side, which were sustained in the accident. Pneumonia developed and

plaintiff's lungs became congested, increasing the pain and difficulty in breathing. However, because of injury to the brain the amount of pain-killing drugs had to be limited.

Dr. Gordon Davenport, a plastic surgeon examined the plaintiff and found the left cheekbone (zygoma) had been knocked out of place in the accident and that surgery was required. He also found nerve damage, causing numbness to the left side of the face. Although immediate surgery could not be performed because of the chest injury, Dr. Davenport later put the cheekbone back into place by an operation which consisted of drilling various holes through the cheekbone and inserting wires to keep the fracture in place. Later X rays showed it had healed in a "good" position. The numbness continued and covered "most of the front of the cheek on the left side; that part of the front of the cheek from the eye down to about the corner of the mouth, and of the nose on that side, and that of the lip on that side." Dr. Davenport further stated that, to a reasonable degree of medical certainty, the numbness was permanent. X rays were taken in May, 1968, wherein Dr. Davenport detected a fracture of the lower jaw and stated, to a reasonable degree of medical certainty, it was a result of the accident, and a factor causing plaintiff's difficulty in chewing.

Dr. Leslie Antonius, a dentist, first saw plaintiff on September 8, 1967, and at that time plaintiff had difficulty in holding his dentures in place, experienced pain when he opened his mouth, and the occlusion of plaintiff's teeth was defective. Plaintiff saw Dr. Antonius a total of fourteen times in being fitted with new dentures. The last time Dr. Antonius examined the plaintiff, the occlusion was still abnormal and there was not sufficient retention of the upper plate. Dr. Antonius stated, to a reasonable degree of medical certainty, plaintiff's difficulty with chewing was permanent and a result of the accident.

Plaintiff's nose was injured in the accident which resulted in his having difficulty in breathing. Dr. Rollo Lange, a nose and throat specialist, performed surgery in August, 1967, to correct a deviation of the septum. The operation was done under a local anesthetic and there were no complications or difficulties which remained after the nose had healed.

At the trial, plaintiff complained of a limp and pain in his left hip. However, no doctor testified as to the nature of any injury in that area. Plaintiff complained that his face was still numb and he had pain from his left cheek down to his shoulder. He also stated he had trouble eating and could not chew certain foods. The wire from the operation is still in his cheek and he complained of a quivering, twitching right eye. Again, however, no doctor testified concerning that condition. There was also testimony that since the accident plaintiff has not been the same person in that he tires easily, frequently falls into a state of depression and no longer has any social activity.

Plaintiff was hospitalized about three weeks, from April 19, 1967, to May 10, 1967. He was also hospitalized three days in August, 1967, during which he underwent nose surgery. On July 3, 1967, Dr. James Schulz examined the plaintiff, approved his return to work, and there is evidence that plaintiff's recovery from the injuries was satisfactory and his progress was good.

Defendant raises a number of arguments with respect to the evidence put forth by the doctors who testified. However, all of them are based on cross-examination of these witnesses and bring into conflict some of the testimony elicited on direct examination. The defendant also points out the fact that plaintiff's complaints of eye twitching, headaches and depression, were subjective. What was created by this evidence was an issue of credibility to be resolved by the jury and which this court must resolve in favor of the jury's verdict.

Defendant urges that this court compare *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587, where the jury awarded $10,000 for past pain, suffering and disability, and $20,000 for future pain, suffering and disability. The trial court concluded the award for future pain, suffering and disability was excessive and lowered the figure to $15,000. There was no issue on appeal concerning past pain, suffering and disability. *Neider*, therefore, has little similarity to this case which deals with the reasonableness of a jury's award of both past, present and future pain, suffering and disability.

Although this court has on occasion compared cases on the question of damages, it has been done only when the issues were sufficiently similar. *Ash v. American Family Mut. Ins. Co.* (1967), 33 Wis. 2d 592, 148 N. W. 2d 58 (whiplash injury). In addition, this court has held that "a comparison with other verdicts at best can only be an imperfect analogy affording some guidelines to the solution but not necessarily determining the result." *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 493, 120 N. W. 2d 692. *Neider* does not provide any guidelines by which this court should now hold the jury's award of $20,000 excessive.

Viewing all the evidence and resolving all conflicts in testimony in favor of the plaintiff, the award made by the jury cannot be said to be in excess of that which constitutes reasonable compensation.

## VI. *Impairment of earning capacity.*

"In *Dietz v. Goodman* (1950), 256 Wis. 370, 374, 41 N. W. (2d) 208, the rule for determining damages for impairment of earning capacity appears as follows:

" 'The amount of damages to which the plaintiff was entitled was the difference, due to the injury, between his earning capacity before the injury and his earning capacity after the injury. Restatement, 4 Torts, p. 631, sec. 924, Comment on clause (b).'

"Professor James D. Ghiardi, Personal Injury Damages in Wisconsin, Future Earnings and Earning Capacity, p. 126, sec. 8.03, writes as follows:

" . . .

" 'Sec. 8.04. *Measure of Recovery.* There is no fixed rule for estimating the amount to be recovered for loss or diminution of future earning capacity. The jury is to take into consideration what the plaintiff's income would probably have been, how long it would have lasted, and all other contingencies that earning capacity is subject to. in order to return a fair and reasonable award. The process of ascertaining the amount of compensation to be awarded requires (1) the determination of the extent to which such capacity has been diminished, and (2) the fixing of the amount of money which will compensate for the determined extent of impairment. The extent of the diminution or impairment of earning capacity is generally to be arrived at by comparing what the injured party was capable of earning at or before the time of the injury with what he was capable of earning after it occurred. In this regard, the nature and extent of the plaintiff's business, profession or employment, his skill and ability in his occupation or profession, the loss or diminution of capacity to follow it as a consequence of the injury, and the damages he has suffered by reason of such loss or diminution may be shown and taken into consideration. 15 Am. Jur., Damages, Secs. 91, 92. . . .' " *Reinke v. Woltjen* (1966), 32 Wis. 2d 653, 659, 146 N. W. 2d 493.

Here, the plaintiff left school after the third grade and started driving a truck when he was about sixteen or seventeen years old. He started working for the Byrns Oil Company in 1951. In 1965, plaintiff's wages totaled $8,154; $7,895.50 in 1966; and $6,976 in 1967. After plaintiff returned to work he drove the same type of truck and trailer as he had done previous to the accident, and he also hauled some extra loads in the fall of 1967 to cover amounts which had been advanced to him. In 1966, plaintiff was off work six weeks due to an injury to his hand. Plaintiff's employer, John Byrns, testified that since the accident plaintiff had only been working

at about "half capacity" and that he often became confused and forgetful.

On appeal, plaintiff argues that testimony concerning his disposition and nature indicates impaired working capacity. However, this evidence goes to the award of personal injuries, not impaired earning capacity.

Defendant claims there is no medical testimony to support any loss of earning capacity and the fact plaintiff was able to return to the same type of work and actually haul extra loads means that any attempt to establish future loss of earnings would be speculative, and an award for impaired earning capacity cannot be sustained. Defendant's argument centers on the fact plaintiff, at the time of trial, had been working for nine months at the same job he had before the accident with no impairment of earnings during that period. However, because there has been no actual loss of wages does not mean there has been no impairment of earning capacity.

". . . . While plaintiff's employer had not reduced his salary of $800 per month, the jury could well believe that he would be unlikely to participate in future pay raises, and that the hazard of being discharged or receiving a cut in pay was greatly increased. The fact that the employer had been generous to date of trial does not negative an impairment in earning capacity. Earning capacity is related to capacity to do the work and earn the salary, and may be impaired materially although the employer generously continues to pay the old rate. *Prunty v. Vandenberg*, 257 Wis. 469, 480, 44 N. W. (2d) 246; *Olk v. Marquardt*, 203 Wis. 479, 486, 234 N. W. 723." *Kincannon v. National Indemnity Co.* (1958), 5 Wis. 2d 231, 236, 92 N. W. 2d 884.

Byrns' testimony that plaintiff was only working at "half capacity" is not in itself sufficient evidence to a reasonable certainty that plaintiff's future earning capacity has been impaired. However, additional testimony by Byrns clearly indicates that plaintiff's continued salary

level was due, in part, to a benevolent attitude on the part of his employer: ". . . his capacity has diminished to the point where we are just going along at a very easy pace, due to the fact he just doesn't feel well." Thus, a jury could conclude that the hazard of being discharged or of plaintiff's wages being cut was greatly increased. *Kincannon v. National Indemnity Co., supra.*

Evidence in this case establishing lack of future earning capacity is minimal in comparison to plaintiff's work record prior to the trial and the fact his earnings had not been impaired during that period. However, this court has recognized the difficulty involved in attempting to establish future loss of earning capacity and has held that only when there is *no* such evidence will the jury be precluded from considering the issue. In *Spleas v. Milwaukee & Suburban Transport Corp.* (1963), 21 Wis. 2d 635, 124 N. W. 2d 593, the only evidence of loss of earning capacity was plaintiff's testimony that he could not always do his regular work and had received only a few small pay raises since the accident while other employees had received more. Nevertheless, this court held there was no error in giving an instruction on loss of earning capacity as damages. The holding made clear that the quantum of proof required to sustain a finding of loss of future earning capacity is not as great as that required in other damage issues.

"In his hornbook on Damages (p. 309, sec. 87), Professor McCormick suggests that courts should scan with more-charitable eyes the sufficiency of proof of loss of earning capacity than the proof of actual past loss of wages. We conclude that the court cannot hold as a matter of law that there was no evidence to warrant an instruction of impairment of future earning capacity. We thus distinguish the instant case from *Behringer v. State Farm Mut. Automobile Ins. Co.* (1959), 6 Wis. (2d) 595, 601, 95 N. W. (2d) 249, where there was a complete absence of evidence of loss of earning capacity."

*Spleas v. Milwaukee & Suburban Transport Corp., supra,* pp. 641, 642.

*Behringer v. State Farm Mut. Automobile Ins. Co., supra,* referred to in *Spleas* is distinguishable from the present case, as is *Lundquist v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 159, 140 N. W. 2d 241. In both *Behringer* and *Lundquist* there was a complete absence of any evidence showing impairment of future earning capacity.

"Plaintiff returned to work on March 2, 1964, just three months after the accident and worked steadily from that time until the date of the trial, April 19, 1965. There was no evidence introduced that plaintiff was unable to perform any part of his regular duties, or that he had even been hampered in performing any of these duties." *Lundquist v. Western Casualty & Surety Co., supra,* page 168.

In this case there was evidence of impaired future earning capacity and from the testimony of Byrns a jury could reasonably infer that the benevolence of plaintiff's employer would not continue until retirement and he would suffer a loss in wages due to the injuries received in the accident.

In light of the age, occupation and skill of the plaintiff, the award for loss of future earning capacity is generous. However, a jury's verdict will not be set aside merely because the reviewing court would have awarded a smaller amount. *Reddick v. Reddick, supra.*

Defendant also urges this court to order a new trial in the interest of justice under sec. 251.09, Stats.

"It is well settled that this court will not exercise its discretion to order a new trial in the interest of justice unless it has been convinced that there has been a probable miscarriage of justice, viewing the case as a whole. *Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. 2d 523, 531, 127 N. W. 2d 804." *Michels v. Green*

*Giant Co.* (1969), 41 Wis. 2d 427, 434, 435, 164 N. W. 2d 217.

A review of the record does not convince us that there has been a probable miscarriage of justice in this case.

*By the Court.*—Judgment affirmed.

BEILFUSS, J., took no part.